WILSON PETTY KOSMO & TURNER LLP
VICKIE E. TURNER (106431)
MERYL C. MANEKER (188342 )
HUBERT KIM (204957)
550 West C Street, Suite 1050
San Diego, California 92101
Telephone: (619) 236-9600
Facsimile: (619) 236-9669
**E-mail:** vturner@wpkt.com
**E-mail:** mmaneker@wpkt.com
**E-mail:** hkim@wpkt.com

McELROY, DEUTSCH, MULVANEY & CARPENTER, LLP
ROBERT P. DONOVAN (*Admitted Pro Hac Vice*)
RYAN P. MULVANEY (*Admitted Pro Hac Vice*)
Three Gateway Center
100 Mulberry Street
Newark, New Jersey 07102
Telephone: (973) 622-7711
Facsimile: (973) 622-5314
**E-mail:** rdonovan@mdmc-law.com
**E-mail:** rmulvaney@mdmc-law.com

Attorneys for Defendants
ARIZONA BEVERAGE CO., LLC, HORNELL BREWING COMPANY, INC., and FEROLITO VULTAGGIO & SONS, INC.

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

HEIDI HITT, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,

Plaintiff,

v.

ARIZONA BEVERAGE CO., LLC; HORNELL BREWING COMPANY, INC.; AND FEROLITO VULTAGGIO & SONS, INC.,

Defendants.

Case No. 08-CV-0809 WQH POR

**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS COMPLAINT**

Complaint Filed: May 2, 2008

Date: September 15, 2008
Time: 11:00 a.m.
District Judge: Hon. William Q. Hayes

Trial Date: Not Set

**[NO ORAL ARGUMENT UNLESS REQUESTED BY COURT]**

TABLE OF CONTENTS


I. INTRODUCTION ....... 1

II. FACTUAL AND PROCEDURAL BACKGROUND ....... 3

III. LEGAL STANDARDS GOVERNING MOTION TO DISMISS ....... 6

- A. Standard of Review for a Motion to Dismiss Pursuant to Rule 12(b)(6) ....... 6
- B. Courts May Rely on Documents in Ruling on Defendants' Motion to Dismiss ....... 7

IV. ARGUMENT ....... 8

- A. Plaintiff's Claims are Preempted by a Comprehensive Federal Regulatory Scheme Governing Labeling of Food and Beverages by the Food and Drug Administration ....... 8
  - 1. Federal Regulatory Framework for Food and Beverage Labeling Under the FDA ....... 9
- B. Federal Law Preempts Plaintiff's Claims ....... 11
  - 1. Plaintiff's Claims Are Expressly Preempted ....... 11
  - 2. Plaintiff's Claims Are Impliedly Preempted ....... 12

V. PLAINTIFF'S COMPLAINT FAILS TO STATE A CAUSE OF ACTION UNDER THE UCL, FAL, OR THE CLRA ....... 17

- A. UCL, FAL and CLRA Causes of Action ....... 17
  - 1. California's UCL ....... 17
  - 2. California's FAL ....... 18
  - 3. California's CLRA ....... 18
  - 4. Uniform Standard of Review ....... 18
- B. Plaintiff's Allegations Fail to Demonstrate That Defendants' Labels Would Likely Deceive A Reasonable Consumer ....... 19

VI. CONCLUSION ....... 21

# TABLE OF AUTHORITIES

## Federal Cases

*Animal Legal Defense Fund Boston, Inc. v. Provimi Veal Corp.*,
626 F. Supp. 278 (D.Mass. 1986) ....................16

*Balistreri v. Pacifica Police Dept.*,
901 F.2d 696 (9th Cir. 1990) ....................6

*Bell Atlantic Corp. v. Twombly*,
__ U.S. __, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ....................3, 6

*Cedars-Sinai Med. v. Nat'l Leag.*,
497 F.3d 972 (9th Cir. 2007) ....................6

*Crosby v. Nat'l Foreign Trade Council*,
530 U.S. 363 (2000) ....................8

*Disabled Rights Action Committee v. Las Vegas Events, Inc.*
375 F.3d 861 (9th Cir. 2004) ....................7

*Fidelity Fed. Sav. & Loan Assn v. de la Cuesta*,
458 U.S. 141 (1982) ....................13

*Fraker v. KFC Corp.*,
2007 WL 1296571 (S.D. Cal. Apr. 30, 2007) ....................1, 13, 14, 15

*Freeman v. Time, Inc.*,
68 F.3d 285 (9th Cir. 1995) ....................3, 18, 20

*Freightliner Corp. v. Myrick*,
514 U.S. 280 (1995) ....................15

*Holder v. Holder*,
305 F.3d 854 (9th Cir. 2002) ....................7

*Holk v. Snapple Beverage Corp.*,
2008 WL 2446844 (D.N.J. June 13, 2008) .................... passim

*Interstate Natural Gas Co. v. Southern California Gas Co.*,
209 F.2d 380 (9th Cir. 1953) ....................7

*Jones v. Rath Packing Co.*,
430 U.S. 519 (1977) ....................8

*Kendall v. Visa U.S.A.*,
518 F.3d 1042 (9th Cir. 2008) ....................7

*Malone v. White Motor Corp.*,
435 U.S. 497 (1978) ....................8

*McKinnis v. General Mills, Inc.*,
2007 WL 4762172, (C.D. Cal. Sept. 18, 2007) ....................17, 18, 19

*Oxygenated Fuels Ass'n, Inc. v. Davis*,
331 F.3d 665 (9th Cir. 2003) ..........8

*Schneidewind v. ANR Pipeline Co.*,
485 U.S. 293 (1988)..........12

*State v. Tenet*,
420 F. Supp. 2d 1288 (S.D. Fla. 2005) ..........8

*Van Buskirk v. Cable News Network, Inc.*,
284 F.3d 977 (9th Cir. 2002) ..........7

*Vasquez v. Los Angeles*,
487 F.3d 1246 (9th Cir. 2007) ..........6

*Watters v. Wachovia Bank, N.A.*,
__ U.S. __, 127 S.Ct. 1559 (2007)..........8

*Williams v. Gerber Prods. Co.*, __ F.3d __,
2008 WL 1776522 (9th Cir. Apr. 21, 2008) ..........20

*Williston Basin v. Executive Gas*,
524 F.3d 1090 (9th Cir. 2008) ..........6

**State Cases**

*Consumer Advocates v. Echostar Satellite Corp.*,
113 Cal. App. 4th 1351 (2003) ..........18

*Kasky v. Nike, Inc.*
27 Cal. 4th 939 (2002) ..........18

**Constitutional Provisions**

United States Constitution, Article IV., clause 2..........8

**Federal Statutes**

1 U.S.C. § 333..........9

21 U.S.C. § 301..........1

21 U.S.C. § 331..........9

21 U.S.C. § 332..........9

21 U.S.C. § 334..........9

21 U.S.C. § 337..........9

21 U.S.C. § 343..........9, 11

21 U.S.C. § 393..........9

28 U.S.C. § 1332..........3

28 U.S.C. § 1391 ....................3
28 U.S.C. § 1453 ....................3
29 U.S.C. § 1367 ....................3

**State Statutes**

California Business and Professions Code, section 17200 ....................5, 17, 18
California Business and Professions Code, section 17500 ....................4, 5, 17, 18
California Commercial Code, section 2313 ....................5, 17
California Commercial Code, section 2315 ....................5, 17
Civil Code section 1750 ....................5, 18

**Rules**

Federal Rules of Civil Procedure Rule 12(b)(6) ....................1, 6, 7, 14
Federal Rules of Civil Procedure, Rule 10 ....................7

**Regulations**

21 C.F.R. § 10 ....................10
21 C.F.R. § 101 ....................2, 10
21 C.F.R. § 102 ....................10, 11, 14
21 C.F.R. § 7.40 ....................9
56 Fed. Reg. 60421 ....................10
58 Fed. Reg. 2302 ....................2, 10, 14
58 Fed. Reg. 2407 ....................2, 10, 14
58 Fed. Reg. 2897 ....................11

**Out-of-State Cases**

*Cohen v. McDonald's Corp.*,
808 N.E.2d 1 (Ill. Ct. App. 2004) ....................16

# I.

# INTRODUCTION

Defendants, AriZona Beverage Co., LLC ("AriZona") and Hornell Brewing Company, Inc., doing business as Ferolito Vultaggio & Sons[1] ("Hornell") (collectively, "Defendants"), through counsel and pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, file the within memorandum in support of their motion to dismiss the class action complaint ("Complaint") filed by Plaintiff, Heidi Hitt ("Plaintiff"), for failure to state a claim upon which relief can be granted. In her Complaint, Plaintiff alleges that Defendants' use of the phrase "All Natural" and reference to fruit in their beverages are misleading and deceptive. As demonstrated below, Plaintiff's claims are preempted and, in any event, should be dismissed because Plaintiff fails to allege sufficient facts to state a claim that is plausible on its face because, under the reasonable consumer standard, any person would be aware of the contents of the products by merely reading the ingredients on the label. Plaintiff acknowledges that she failed to do so. Compl., ¶49.

This motion involves pure issues of law.[2] Pursuant to the doctrine of preemption, Plaintiff's claims are not cognizant or justiciable before this Court. In *Fraker v. KFC Corp.*, No. 06-cv-01284, 2007 WL 1296571 (S.D. Cal. Apr. 30, 2007), the United States District Court for the Southern District of California held that the plaintiff's claims regarding the defendant's statements about the trans-fat content of its foods was preempted by the Food and Drug Administration ("FDA") pursuant to the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 301, *et seq.* ("FFDCA"). Likewise, in *Holk v. Snapple Beverage Corp.*, 2008 WL 2446844 (D.N.J. June 13, 2008), the District of New Jersey dismissed on preemption grounds a virtually identical class action complaint against Snapple Beverage Corp. that asserted mislabeling allegations just like those asserted by Plaintiff here. Both *Fraker* and *Holk* are dispositive of Plaintiff's claims because they held that the plaintiff's claims were impliedly preempted by regulations promulgated by the FDA.

---

[1] The Complaint misidentifies and names as a separate defendant "Ferolito, Vutaggio & Sons, Inc.," which is a registered business name of Hornell Brewing Company, Inc. and is not a corporation or a separate entity.

[2] Defendants request oral argument because the motion is a dispositive application involving a putative class action concerning detailed labeling requirements under a federal regulatory scheme.

Plaintiff's claims are centered upon allegations of mislabeling of Defendants' beverage products labeled as "All Natural," (Compl., ¶ 4), and those products bearing a fruit in the name. *Id.* at ¶ 6. With regard to the beverages labeled "All Natural," Plaintiff claims that those beverages are deceptively labeled because they contain high fructose corn syrup ("HFCS"), which Plaintiff alleges is not a natural substance. *Id.* ¶¶ 23, 28. With regard to the beverages that have a fruit in the name, Plaintiff claims that those beverages are deceptively labeled and alleges that the type of fruit referred to in the product is not substantially contained therein and/or the beverage has no fruit content at all. *Id.* at ¶¶ 24, 39-40.

Whether the beverages are adequately labeled is expressly regulated by the FDA. Through the FFDCA, Congress has delegated to the FDA the authority to issue comprehensive and detailed regulations to enforce the FFDCA. The FDA has issued extensive regulations governing various aspects of labeling beverages containing fruit juice including requirements of what beverage labels should state in terms of percentage content of juice. 21 C.F.R. § 101.30(a)-(g). The FDA regulates the content of beverage labels even when the beverage does not contain any fruit derivative at all. *Id.* The FDA has also defined what constitutes "artificial flavor" and "natural flavor." 21 C.F.R. §101.22(a)(1); 21 C.F.R. §101.22(a)(3). With regard to the term "natural," the FDA has decided not to restrict the use of the term except to state that substance with added color, synthetic substances, and flavors, are not to be considered "natural;" the FDA construes the term "natural" as meaning that nothing artificial or synthetic has been included in or added to a food. 58 Fed. Reg. 2302, 2407 (Jan. 6, 1993).

Furthermore, with respect to the use of the phrase "All Natural," the FDA issued a letter on July 3, 2008, in which it specifically outlined its policy regarding labeling of food and beverage products that contain HFCS. In its letter, the FDA reaffirmed its position that it does not restrict the use of the term "natural" except on products that contain added color, synthetic substances and flavors.

To decide the merits of Plaintiff's claims, the Court must decide whether or not Defendants' labels comply with FDA labeling requirements. Plaintiff's claims, however, must be directed to the

proper forum – the FDA. Plaintiff's impermissible attempt to regulate through litigation here, however, should be rejected.

Under *Bell Atlantic Corp. v. Twombly*, __ U.S. __, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), Plaintiff's claims should be dismissed because they are implausible. To prevail, Plaintiff must demonstrate that Defendants misrepresented the contents of their beverages. However, Plaintiff admitted in the Complaint that she did not read the ingredients on the label which accurately detailed the contents of Defendants' beverages. Plaintiff, in doing so, was not a reasonable consumer. The labels attached to the Complaint and the Declaration of Don Vultaggio ("Vultaggio Dec."), Chairman of Hornell, show that in each and every instance the ingredients of Defendants' beverages are set forth on their labels pursuant to FDA requirements. Any reasonable consumer would be able to discern the contents of Defendants' beverages if they read the labels. Under *Freeman*, the standard is the reasonable consumer. *See Freeman v. Time, Inc.*, 68 F.3d 285 (9th Cir. 1995). This Court, like *Freeman*, should apply the reasonable consumer test to the claims asserted by Plaintiff here. As a matter of law, Plaintiff cannot demonstrate that Defendants' labels constitute misrepresentations given the labels themselves and the reasonable consumer standard.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff filed the Complaint[3] on May 2, 2008, pursuant to 28 U.S.C. §§ 1332, 1391, 29 U.S.C. § 1367, and the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), 1453 ("CAFA"). Plaintiff brings this putative class action on behalf of two putative classes of allegedly similarly situated classes of persons:

> Class A: All persons in California who purchased any of Defendants' "All Natural Products" which contained High Fructose Corn Syrup during the "Class Period" and which were marketed, advertised or labeled as being "All Natural", "Natural" or "100% Natural".

---

[3] Similar putative class actions have been filed against Defendants in other jurisdictions including *Covington v. Arizona Beverage Co., et al.*, which was filed on or about May 20, 2008, in the Circuit Court of the 11th Judicial Circuit in and for Miami-Dade County, Florida, and, after being removed, is currently pending in the United States District Court for the Southern District of Florida under Civil Action Number 08-cv-21894; and *Coyle v. Hornell Brewing Co., et al.*, which was filed on or about April 21, 2008, in the Superior Court of New Jersey, Law Division, Atlantic County. The *Coyle* case was removed to the United States District Court for the District of New Jersey and is currently pending under Civil Action Number 08-cv-2797.

> Class B: All persons in California who purchased any of Defendants' "Fruit Products" during the "Class Period" which included the name of a fruit in the product name but which did not contain a substantial amount of that fruit.

Compl., ¶ 51. The Complaint defines the "Class Period" to "the four (4) years immediately preceding the filing of this action." *Id.* ¶ 53.

Plaintiff's claims concern alleged mislabeling and misbranding of all of Defendants' "All Natural" products and products that reference a fruit in the product's name. Specifically, Plaintiff alleges and seeks redress for:

> 23. Defendants' deliberate and unlawful mislabeling and misbranding of drink products as being "All Natural", "Natural" "100% Natural" or similar misrepresentations of AriZona products which contain one or more non-natural or artificial ingredients, such as High Fructose Corn Syrup ("HFCS").
>
> 24. Defendants' deliberate and unlawful mislabeling and misbranding of drink products that do not contain a substantial amount of the fruit identified in the product's name.

*Id.* ¶¶ 23, 24.

Plaintiff's first two causes of action claim liability under section 17500 of the California Business and Professions Code. In the first cause of action, Plaintiff alleges that (1) Defendants schemed to offer for sale "All Natural Products" that contained HFCS and "Fruit Products" that do not contain a substantial amount of the fruit named on the label, *id.* ¶ 63, 64, 68, 69; (2) Plaintiff relied on Defendants' representations, which they knew or should have known were false, *id.* ¶ 66; and (3) Defendants' dissemination of allegedly misleading information concerning the ingredients of the "All Natural" and "Fruit" beverages constitutes the "misleading prong" of the California Business and Professions Code, § 17500. *Id.* ¶ 72.

Plaintiff's second cause of action is for untrue advertising. Plaintiff alleges that (1) Defendants, through labeling, packaging and the Internet, offered for sale "All Natural Products" that contained HFCS and "Fruit Products" that did not contain a substantial amount of the fruit named on the label, *id.* ¶¶ 78-80; (2) Plaintiff relied on Defendants' false representations, *id.* ¶¶ 81-82; and (3) Defendants' dissemination of misleading information regarding the ingredients of their

beverages violates the "untrue prong" under California Business and Professions Code, § 17500. *Id.* ¶ 83.

Plaintiff's third through fifth causes of action claim liability under section 17200 of the California Business and Professions Code. In the third cause of action, Plaintiff asserts a claim for unlawful business acts and practices. Plaintiff claims that (1) Defendants' "[m]anufacturing, marketing, advertising, selling and distributing" products labeled as "All Natural" and with fruit was unlawful, *id.* ¶¶ 87-89; (2) by virtue of Defendants' business practices constituting violations of section 17500 of the Business and Professions Code, they are unlawful under the CLRA, and constitute a breach of an express warranty and implied warranty of fitness for a particular purpose under California Commercial Code §§ 2313 and 2315, respectively. *Id.* ¶¶ 90-92.

In the fourth cause of action, Plaintiff alleges that (1) she was substantially injured by purchasing the "All Natural Products" and "Fruit Products;" (2) by virtue of buying a product that Plaintiff would not have purchased absent Defendants' unfair advertising, *id.* ¶¶ 97-98; and (3) Plaintiff had no way of reasonably knowing that Defendants' products were not "All Natural" or did not contain any substantial amount of fruit. I*d.* ¶¶ 101-02.

In the fifth cause of action, Plaintiff asserts claims for fraudulent business acts. Asserting that she purchased "All Natural" and products bearing fruit in the name, Plaintiff alleges that (1) she suffered damages as a result of Defendants' fraudulent advertising, *id.* ¶¶ 98, 99, 111, 112; and (2) Defendants' products were likely to deceive reasonable purchasers because Plaintiff had no way of knowing of the falsities of Defendants' labels and was deceived into believing that the products were "All Natural" and contained fruit. *Id.* ¶¶ 101, 102, 109-112.

In the sixth cause of action, Plaintiff seeks declaratory and injunctive relief pursuant to the Consumer Legal Remedies Act, Civil Code section 1750 *et seq.*, ("CLRA"). Plaintiff alleges that Defendants' conduct violates two specific subsections of section 1770, namely representing that their products contain an ingredient or characteristics that they do not in violation of subsection (a)(5), and representing that the products are of a particular quality in violation of subsection (a)(7). *Id.* ¶¶ 129, 130.

Plaintiff seeks injunctive relief to enjoin Defendants from describing, marketing, advertising, labeling and promoting any of Defendants' beverages as "All Natural," "Natural" or "100% Natural," and any of Defendants' beverages which list a fruit in the product's name, unless the product contains a significant amount of the listed fruit. *Id.* Art. XII(B-D). Plaintiff also seeks a disgorgement of Defendants' profits for the past four (4) years, reimbursement for alleged ascertainable individual losses, attorneys' fees and costs. *Id.* Art. XII(F).

## III.

## LEGAL STANDARDS GOVERNING MOTION TO DISMISS

### A. Standard of Review for a Motion to Dismiss Pursuant to Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for dismissal based on the pleader's "failure to state a claim upon which relief can be granted." Rule 12(b)(6) permits dismissal of a claim either where that claim lacks a cognizable legal theory, or where insufficient facts are alleged to support the claim's theory. *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990). In a motion to dismiss, the allegations in the complaint are generally accepted as true, interpreted in the light most favorable to the plaintiff. *See e.g., Williston Basin v. Executive Gas*, 524 F.3d 1090, 1096 (9th Cir. 2008) (citing *Outdoor Media Group, Inc. v. City of Beaumont*, 506 F.3d 895 (9th Cir. 2007). The court, however, is not required to accept as true conclusory allegations that are contradicted by documents referred to in the complaint, and does not necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations. *See Cedars-Sinai Med. v. Nat'l Leag.*, 497 F.3d 972, 975 (9th Cir. 2007) (citing *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136 (9th Cir. 2003)). In fact, this Court has consistently emphasized that conclusory allegations of law and unwarranted inferences will not defeat an otherwise proper motion to dismiss. *Vasquez v. Los Angeles*, 487 F.3d 1246, 1249 (9th Cir. 2007) (quoting *Schmier v. U.S. Court of Appeals for the Ninth Circuit*, 279 F.3d 817 (9th Cir 2002)).

Moreover, the standard for pleading a sufficient claim has changed. In order to survive a motion to dismiss under Rule 12(b)(6), a plaintiff must allege "enough facts to state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, __ U.S. __, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). A plaintiff must allege "more than labels and conclusions, and a formulaic

recitation of the elements of a cause of action." *Id.* at 1965. Rather, a plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true even if doubtful in fact." *Id.* at 1964-65; *see also Kendall v. Visa U.S.A.*, 518 F.3d 1042 (9th Cir. 2008).

**B. <u>Courts May Rely on Documents in Ruling on Defendants' Motion to Dismiss</u>**

"Ordinarily, a court may look only at the face of the complaint to decide a motion to dismiss." *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002). There are, however, exceptions to that general rule. Under the incorporation by reference rule, "a court may look beyond the pleadings without converting the Rule 12(b)(6) motion into one for summary judgment." *Id.* A court may also consider exhibits attached to the complaint, and matters properly subject to judicial notice such as federal regulatory authority. Fed.R.Civ.P. 10(c) (providing exhibit to pleading "is a part thereof for all purposes[]"); *Van Buskirk,* 284 F.3d at 980 (documents extensively referenced in complaint and accepted by parties as authentic may be considered); *Interstate Natural Gas Co. v. Southern California Gas Co.*, 209 F.2d 380, 385 (9th Cir. 1953) (noting court may take judicial notice of "records and reports of administrative bodies."); *Holder v. Holder*, 305 F.3d 854, 866 (9th Cir. 2002) (taking judicial notice of California Court of Appeal opinion and briefs filed with trial court).

Here, the labeling challenged by Plaintiff is expressly referenced throughout and is integral to the claims set forth in the Complaint. Because labeling is integral to – and is the gravamen of – the Complaint, this Court may consider the labels, samples of which are annexed to the Vultaggio Declaration as Exhibit A. In addition, the Court may take judicial notice of the records of the FDA where it has commented on the meaning of the term "natural" and the ingredient HFCS in comments dated December 14, 2005, and July 3, 2008. *See* Request for Judicial Notice, Exhs. A, B. *Disabled Rights Action Committee v. Las Vegas Events, Inc.* 375 F.3d 861, 866, fn.1 (9th Cir. 2004).

## IV.

## ARGUMENT

### A. Plaintiff's Claims are Preempted by a Comprehensive Federal Regulatory Scheme Governing Labeling of Food and Beverages by the Food and Drug Administration

The preemption doctrine arises from the constitutional rule that the laws of the United States are the "supreme Law of the Land," "any Thing in the Constitution or Law of Any State to the Contrary notwithstanding." U.S. Const., art. IV., cl. 2; *Cippolone v. Liggett Group, Inc.*, 505 U.S. 504, 516 (1992). "The purpose of Congress is the ultimate touchstone" of the preemption analysis. *Malone v. White Motor Corp.*, 435 U.S. 497, 504 (1978). Congressional intent may be "explicitly stated in the statute's language or implicitly contained in its structure and purpose." *Jones v. Rath Packing Co.*, 430 U.S. 519, 525 (1977). Further, a comprehensive federal regulatory scheme "can displace state law causes of action just as completely as statutes can." *State v. Tenet*, 420 F. Supp. 2d 1288, 1297 (S.D. Fla. 2005). As the Supreme Court of the United States recently reaffirmed, preemption prevents "the burdens and undue duplication state controls could produce" where Congress has determined that "confusion would necessarily result from control possessed and exercised by two independent authorities." *Watters v. Wachovia Bank, N.A.*, __ U.S. __, 127 S.Ct. 1559, 1568, 167 L.Ed.2d 389 (2007).

The Supreme Court and the Ninth Circuit have recognized three types of preemption: (1) express; (2) field; and (3) conflict. *Oxygenated Fuels Ass'n, Inc. v. Davis*, 331 F.3d 665, 667 (9th Cir. 2003) (citing *English v. Gen. Elec. Co.*, 496 U.S. 72, 79 (1990); *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363 (2000)). In the present matter, Congress has both expressly preempted the type of claims asserted by Plaintiff and has fully occupied the field of regulating food and beverage labeling.

Plaintiff's claims are nothing more than an attempt to compel compliance with FDA regulations regarding the labeling of beverages. Plaintiff's efforts to do so, however, disregard congressional mandate by directly encroaching in an area that is already heavily and comprehensively regulated by the FDA, namely the labeling, marketing and promoting of beverages. The Complaint should be dismissed because Plaintiff's claims are based solely on alleged improper

labeling of beverages, an area that is preempted by FDA regulations. The Complaint is preempted precisely because, in adjudicating the claims, this Court would necessarily rule upon beverage labeling—an area that Congress intended the FDA to occupy exclusively.

**1. Federal Regulatory Framework for Food and Beverage Labeling Under the FDA**

The FFDCA is a comprehensive statute that serves as the basis for federal regulation of food and beverages. In the FFDCA, Congress created the FDA and authorized it to issue regulations to "protect the public health by ensuring that – foods are safe, wholesome, sanitary, and properly labeled[.]" 21 U.S.C. §§ 393(a), 393(b)(2)(a). Congress has reserved sole enforcement authority to the FDA on behalf of the federal government, requiring that "all such proceedings for the enforcement, or to restrain violations, of this chapter shall be by and in the name of the United States." 21 U.S.C. § 337(a). Congress has authorized the FDA to enforce its regulations promulgated under the FFDCA in a number of ways, including, but not limited to, enjoining violations in federal court, 21 U.S.C. § 332; recovery of penalties by the Attorney General, 21 U.S.C. § 333; seizure of goods in violation of regulations, 21 U.S.C. § 334; and voluntary recall. 21 C.F.R. § 7.40. A state agency may not initiate civil enforcement proceedings under certain sections of the FFDCA without first notifying the Federal Government, and then only if the Federal Government does not initiate their own proceeding. 21 U.S.C. § 337(b). Congress has also mandated that any state labeling regulations be "identical" to the equivalent regulation promulgated by the FDA under the FFDCA. 21 U.S.C. § 343-1(a)(2).

a. FDA Regulation of Use of the Term "Natural" on Food and Beverage Labeling

Congress has vested the FDA with authority to promulgate regulations to ensure that food and beverages are "properly labeled." 21 U.S.C. § 393(b)(2)(A). For instance, the FFDCA includes a legion of provisions setting forth the requirements necessary for compliance, as well as the potential consequences of deviating from labeling requirements, within the comprehensive federal regulatory labeling scheme. *See, e.g.*, 21 U.S.C. § 343(a) (defining "misbranding"); 21 U.S.C. § 331(a) (prohibiting "misbranding"); 21 U.S.C. § 343-1 (providing for "National uniform nutritional labeling"); 21 U.S.C. § 334(a) (making misbranded food and beverages subject to seizure); 21

U.S.C. § 378 (providing for referral of misbranded products to Federal Trade Commission). The FDA, in turn, has issued meticulous regulations that pertain specifically to labeling including, but not limited to, provisions regarding misbranding to specific labeling requirements. *See generally* 21 C.F.R. §§ 101.4-101.100, 102.5, 102.33.

The FDA has a well-established, unrestrictive policy on the use of phrases such as “All Natural” and “100% Natural.” FDA Docket No. 2004P-0009/CP1 (citing 56 Fed. Reg. 60,421, 60,466 (Nov. 27, 1991) and 58 Fed. Reg. 2302, 2407 (Jan. 6, 1993)), Ex. A to Defendant’s Request for Judicial Notice (“RJN”) The FDA has expressly ruled that it will not restrict the use of the term “natural” “except for added color, synthetic substances and flavors under [21 C.F.R.] § 101.22.” 56 Fed. Reg. 60421, 60466 (Nov. 27, 1991). Indeed, the FDA has consistently maintained its policy on the labeling of products as “All Natural.” Following solicitation of public comment for a definition of “natural,” and reconsideration of prior rulings, the FDA reaffirmed its policy for “natural” as set forth in 56 Fed. Reg. 60421. 58 Fed. Reg. 2302 (Jan. 6, 1993). In response to a 2005 citizen petition filed pursuant to 21 C.F.R. § 10.30(e), the FDA denied the petitioner’s request to define the terms “All Natural” and “100% Natural.” Request for Judicial Notice, Exh. A (FDA Docket No. 2004P-0009/CP1 (Dec. 12, 2005)). In its 2005 ruling on the citizen petitions, the FDA noted that it has considered defining the term “natural” in January 1993, but consciously declined to do so and left intact 58 Fed. Reg. 2302 governing use of the term “natural.” *Id.* The FDA’s pronouncements on “natural” are binding on the agency, which cannot take regulatory action against a company that labels its products in conformance with them. 21 C.F.R. § 10.85 (e).

On July 3, 2008, the FDA issued a comment to the Corn Refiners Association (“CRA”) in which it outlined its policy regarding labeling of food and beverage products that contain HFCS. Request for Judicial Notice, Exh. B (FDA Comment July 3, 2008). In its letter to the CRA, the FDA responded to a request that it “reconsider its position on whether the use of the term ‘natural’ can be used to describe products containing HFCS.” *Id.* Echoing the language used by the FDA in 58 Fed. Reg. 2302, the FDA stressed that it does not restrict the use of the term “natural” except on products that contain added color, synthetic substances, and flavors. *Id.*

b. FDA Regulation of Beverages With Fruit Referenced on Label

The FFDCA sets forth federal authority governing the fruit content of beverages at 21 U.S.C. § 343(i), and the FDA has promulgated regulations that govern labeling of beverages purporting to contain fruit at 21 C.F.R. §§ 101.30 and 102.33. Section 102.33 establishes detailed rules specifying use of the term "juice," 21 C.F.R. § 102.33(a), the order of ingredients in beverages containing juices, *id.* at § 102.33(b), the name of such beverages, *id.* at § 102.33(c), the labeling of such beverages where the fruit referenced on the label is not a predominant juice, *id.* at § 102.33(d), use of a fruit in the name of a beverage where that juice has been modified, *id.* at § 102.33(e), pictures on the beverage labels, *id.* at § 102.33(f), and the type size that must be used on such beverage labels. *Id.* at § 102.33(g).

The FDA regulates the content of beverage labels even when the beverage does not contain any fruit derivative at all. 21 C.F.R. § 101.30(a)-(g). The FDA even approves graphics that depict characterizing flavor ingredients such as the fruit flavors at issue here where, as alleged here, the characterizing flavors, but not necessarily the juices, are present in the product. *See, e.g.*, 21 C.F.R. § 101.22(i); 58 Fed. Reg. 2897, 2921-2 (Jan. 6, 1993) (expressly declining to limit depictions of fruit to those fruit juices specifically found in a product). The FDA has expressly approved vignettes on juice beverage labels that contain only the natural or artificial flavor of the represented fruit. *Id.* at 2897, 2922.

**B. <u>Federal Law Preempts Plaintiff's Claims</u>**

Plaintiff claims that Defendants' use of the phrase "All Natural" and the lack of a substantial amount or any fruit at all constitute violations of state statutory law. As the cases in this and other federal districts demonstrate, however, Plaintiff's claims are preempted and not susceptible to judicial review and scrutiny.

**1. Plaintiff's Claims Are Expressly Preempted**

Under express preemption, Congress defines "explicitly the extent to which its enactments pre-empt state law." *English*, 496 U.S. at 79 (citing *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 95-98 (1983)). "Pre-emption fundamentally is a question of congressional intent, *see Schneidewind v.*

*ANR Pipeline Co.*, 485 U.S. 293, 299 (1988), and when Congress has made its intent known through explicit statutory language, the court's task is an easy one." *English*, 496 U.S. at 78-79.

As previously demonstrated, the breadth of the FFDCA and the FDA's regulatory labeling scheme extends to and expressly covers beverages purporting to contain fruit and the characterizing flavors of beverages. *See*, *infra*, at pp.12-13. In *Holk*, the plaintiff originally asserted claims against the defendant alleging that the labels on the defendant's beverages were deceptive because they depicted fruit. *Holk*, 2008 WL 2446844, *14. Although the court agreed that the plaintiff's labeling claims were not expressly preempted by the FFDCA (they were, however, impliedly preempted), the court, after highlighting the panoply of regulations regarding fruit juice, observed that the defendant's "express preemption arguments were directed to Plaintiff's claims concerning the fruit juices contained in Snapple beverages, which Plaintiff has withdrawn." *Id.* at *14, n.3. The obvious implication of this observation was that the claims of deception regarding labeling of beverages referring to fruit was expressly preempted precisely because when faced with that argument, the Plaintiff withdrew its complaint.

**2. Plaintiff's Claims Are Impliedly Preempted**

a. Plaintiff's Claims Are Preempted Because the FDA Has Occupied The Field of Beverage Labeling

"In the absence of explicit statutory language, state law is pre-empted where it regulates conduct in a field that Congress intended the Federal Government to occupy exclusively." *English*, 496 U.S. at 79. Congressional intent "may be inferred from a 'scheme of federal regulation … so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it,' or where an Act of Congress 'touch[es] a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject.'" *Id.* (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947)). Here, the FDA's occupation of the field is readily apparent by the wealth of regulations and policies concerning beverage labeling. A finding otherwise would render the FDA's regulatory scheme meaningless.

In a similar case to the matter at hand, the Southern District of California upheld the principle that state law tort claims are impliedly preempted by the FFDCA. *Fraker v. KFC Corp.*, No. 06-cv-01284, 2007 WL 1296571, *4 (S.D. Cal. Apr. 30, 2007). In *Fraker*, the plaintiff claimed that the defendant's statements regarding the non-trans fat content of its food products violated, *inter alia*, the UCL, FAL, and the FFDCA. *Id.* at *2, 3. The court recognized that "[s]tate-law fraud-on-the-FDA claims inevitably conflict with the FDA's responsibility to police fraud consistently with the Administration's judgment and objectives." *Id.* at *4 (citing *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 350 (2001)). Following *Buckman Co.*, *Fraker* reiterated the very dangers that the preemption doctrine was designed to avoid:

> As a practical matter, complying with the FDA's detailed regulatory regime in the shadow of 50 States' tort regimes will dramatically increase the burdens facing potential applicants – burdens not contemplated by Congress in enacting the FDCA and the [Medical Devices Act].

*Id.* (citing *Buckman Co.*, 531 U.S. at 350). In dismissing the plaintiff's state law claims under the doctrine of implied preemption, the court held:

> the FDCA presents a comprehensive regulatory scheme of branding and labeling of food products. To overlay the state law tort system of the FDCA would significantly increase the burdens on the FDA to ensure uniform enforcement of its administrative duties.

*Id.*; *see also Fidelity Fed. Sav. & Loan Assn v. de la Cuesta*, 458 U.S. 141, 153 (1982) (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947)) (noting Congress can impliedly preempt state law requirements when it so thoroughly occupies an area of the law "'as to make reasonable the inference that Congress left no room for the States to supplement it.'")

Furthermore, in *Holk*, the plaintiff filed a class action complaint against Snapple Beverage Corp. ("Snapple") in which she claimed that Snapple's use of "All Natural" on its labeling violated New Jersey's Consumer Fraud Act, N.J.S.A. § 56:8-1 et seq., and constituted unjust enrichment and a breach of warranty. *Id.* at *1. Plaintiff in *Holk*, like Plaintiff here, alleged that the beverage's labeling was misleading and deceptive because the iced tea drinks were not "All Natural" because they contained HFCS. *Id.* at *2. The District of New Jersey agreed with Snapple that the plaintiff's claims were impliedly preempted "by the detailed and extensive regulatory authority scheme

established by the FFDCA and the FDA's implementing regulations." *Id.* at *14 (citing *Geier v. Am. Honda Motor Co., Inc.*, 529 U.S. 861, 884-85 (2000)). The court recognized that:

> Although the FDA has declined to undertake rulemaking to establish a definition for the term "natural," the FDA has specifically defined the term "natural flavor." *See* 21 C.F.R. § 101.22(a)(3); *see also* 58 Fed. Reg. 2302, 2407 (Jan. 6, 1993). Also, the FDA has a current published policy regarding the term "natural." Specifically, it has decided (1) not to restrict the use of the term, except for added color, synthetic substances, and flavors, and (2) to construe it as meaning that "nothing artificial or synthetic (including all color additives regardless of source) has been included in, or has been added to, a food that would not normally be expected to be in the food." 58 Fed. Reg. at 2407.

*Id.* at *16. The court found that "the FDA has in fact contemplated the appropriate use of the term "natural" in connection with foods and beverages." *Id.* (citing 58 Fed. Reg. 2407); *see also* Request for Judicial Notice, Exh. B (FDA Comment July 3, 2008). The court also found that the FDA has extensive regulations that preempt the field and govern the naming of a beverage containing fruit. *Id.* at *15 (citing 21 C.F.R. § 1.1 et seq.; 21 C.F.R. § 102.33(a)-(g)). The district court "conclude[d] that the FFDCA and FDA regulations so thoroughly occupy the field of the beverage labeling at issue in this case that it would be unreasonable to infer that Congress intended states to supplement this area." *Id.* at *17, 15 (citing *C.E.R. 1988, Inc. v. Aetna Cas. & Sur. Co.*, 386 F.3d 263, 269 (3d Cir. 2004)). Based on those conditions, the court refused to define how the terms "natural" or "all natural," and left that to the FDA. *Id.* at 17 (citing *Sandoz Pharm. Corp. v. Richardson-Vicks, Inc.*, 902 F.2d 222, 231-32 (3d Cir. 1990) (holding that because "FDA has not found conclusively that demulcents must be labeled … within the meaning of FDA," court refused "to find … that which the FDA, with all of its scientific expertise, has yet to determine.")

*Fraker* and *Holk* are dispositive of the question of preemption here because the allegations in the Complaint are the same as the allegations as presented in *Fraker* and *Holk* on Rule 12(b)(6) motions. In *Fraker* and *Holk*, each plaintiff challenged the defendants' use of statements on their products' labels for which the plaintiffs sought redress pursuant to state consumer protection statutes and other common law consumer claims. In both cases, the federal courts dismissed the plaintiffs' complaints on implied preemption grounds, holding that the allegations were ill-suited for judicial review and resolution because of the FDA's comprehensive regulatory framework. *Id.*

*Fraker* and *Holk* are further dispositive because federal courts will apply federal law to determine whether state law claims are preempted by a federal regulatory scheme. To make that determination, federal courts are not bound by state court decisions on federal preemption. *See Fraker*, 2007 WL 1296571, at *4.

b. Plaintiff's Claims Are Impliedly Preempted Because They Stand As An Obstacle to Accomplishing Federal Objectives

State law claims are also impliedly preempted when they "stand[] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *English*, 496 U.S. at 79. "Obstacle" preemption applies even though a statute contains an express preemption clause. *Freightliner Corp. v. Myrick*, 514 U.S. 280, 287-88 (1995). In *Geier*, the Supreme Court of the United States affirmed that preemption does not "require a formal agency statement of pre-emptive intent as a prerequisite to concluding that a conflict exists" – *i.e.*, that preemption can (and must) be inferred from a comprehensive federal regulatory scheme. 529 U.S. at 884. The Supreme Court therefore held that because federal standards concerning airbags "deliberately provided the manufacturer with a range of choices among different passive restraint devices," common-law claims seeking to "restrict that range of choices" were preempted "as an obstacle to the accomplishment and execution of important … [federal] objectives." *Id.* at 875, 881.

The logic of *Geier* and *Holk* compels the same conclusion here. The FDA is charged with overseeing a complex statutory scheme that requires the agency to balance important and sometimes competing policy objectives – a balance that might easily be upset by allowing mislabeling claims to proceed under state tort law. *See Buckman Co.*, 531 U.S. at 348 (holding that tort claims based on misrepresentations made in FDA drug-approval process would "disrupt the balancing of federal statutory objectives"). In the similar context of drug labeling, the FDA has taken the position that because of "the comprehensiveness of FDA regulations of drug safety, effectiveness, and labeling under the [FFDCA]," tort cases based on state law are preempted because they "threaten FDA's statutorily prescribed role as the expert Federal agency responsible for evaluating and regulating drugs." 71 C.F.R. §§ 3922, 3935 (Jan. 24, 2006). Here, as was recognized in *Holk*, the sheer enormity of the federal statutory, regulatory and administrative framework is a powerful indicator of

Congress's intent to at the very least occupy the labeling field, and thus preempt Plaintiff's claims for deceptive and misleading labeling. *Holk*, 2008 WL 2446844, *15-19.

That reasoning applies just as forcefully to the labeling requirements at issue here, where Plaintiff's request for declaratory, equitable and monetary relief based only on alleged mislabeling impermissibly intrudes upon the comprehensive and uniform regulatory scheme for food and beverage labeling established by Congress and implemented (and enforced) by the FDA. As in *Geier* and *Holk,* Plaintiff's claims, if accepted, would stand as an obstacle to the federal objectives of consistency and uniformity by imposing new requirements and state law standards. They are therefore impliedly preempted and should be dismissed.

Courts have regularly dismissed claims brought under state consumer fraud statutes on preemption grounds where, as here, such litigation would undermine the objectives of a comprehensive federal regulatory scheme. For example, in *Cohen v. McDonald's Corp.*, 808 N.E.2d 1 (Ill. Ct. App. 2004), the plaintiff alleged that McDonald's "Happy Meals" were "mislabeled" because they did not include "Nutrition Facts." The court rejected the plaintiff's claim and explained that the FFDCA specifically exempts restaurants from FDA labeling requirements. *Id.* at 7. Accordingly, to the extent the plaintiff's consumer fraud suit sought to impose requirements "that are different from federal law," it was preempted. *Id.* at 6. Emphasizing that "[t]his is a state court, not the FDA," the court declined to "fill holes in the [FFDCA] where the federal government has yet to do so." *Id.* at 10.

Similarly, in *Animal Legal Defense Fund Boston, Inc. v. Provimi Veal Corp.*, 626 F. Supp. 278, 284 (D.Mass. 1986), the plaintiff sued a Wisconsin veal producer alleging that the defendant "ought to tell the consumers that its veal might be unhealthful because it comes from calves that are fed antibiotics" and that "not telling [consumers] is unfair and deceptive." The district court held that the plaintiff's consumer fraud claims were preempted by a "comprehensive federal scheme regulating the labeling, packaging and marketing of meat" that made clear "Congress' intent to occupy the field … and to direct the State to leave all regulatory activity in that area to the federal government[.]" *Id.* at 284. The plaintiff's lawsuit was "an inappropriate remedy" and dismissal was required. *Id.* at 281.

Here, Congress has assigned responsibility for making judgments (and enforcing them) about labeling to the regulatory expertise of the FDA, not to the judiciary. Because enforcement actions are exclusively reserved to the federal government, or to the states under the auspices of the federal government and having a statutory scheme identical to the FFDCA, Plaintiff's claims are an unlawful usurpation of exclusive federal authority to enforce alleged instances of mislabeling of beverages. Plaintiff's mislabeling claims must be dismissed because they are preempted pursuant to the comprehensiveness of the federal regulatory framework and the FDA's express enforcement authority, and Congress's important objectives of national uniformity and consistency in regulating food and beverage labeling. Plaintiff may not seek adjudication of issues and claims that are properly the subject of and within the domain of regulation.

**V.**

**PLAINTIFF'S COMPLAINT FAILS TO STATE A CAUSE OF ACTION UNDER THE UCL, FAL, OR THE CLRA**

In her six-Count Complaint, Plaintiff asserts statutory claims under California's UCL, FAL and the CLRA because Defendants, through its alleged "mislabeling and misbranding of drink beverages." Compl., ¶¶ 23, 24. Through terms such as "All Natural" and using the name of certain fruits in their marketing, advertising, labeling and packaging of their beverages, Plaintiff claims that Defendants "induce[d] consumers … into believing that the product being described contains only naturally occurring ingredients" and "that the product being described contains a substantial amount of the named fruit." *Id.* at ¶¶ 4, 7.

**A. UCL, FAL and CLRA Causes of Action**

**1. California's UCL**

"Under the UCL, 'unfair competition shall mean and include any unlawful practice, unfair or fraudulent business act or practice[.]" *McKinnis v. General Mills, Inc.*, No. CV-07-2521, 2007 WL 4762172, *2 (C.D. Cal. Sept. 18, 2007) (quoting Cal. Bus. & Prof. Code § 17200). Plaintiff predicates her claims on Defendants' alleged violations of section 17500 of the Business and Professions Code governing false advertising, breach of express warranty, Cal. Civ. Code § 2313, and implied warranty, Cal. Civ. Code § 2315. Compl., ¶¶ 91, 92.

**2. California's FAL**

The FAL "prohibits public use of untrue or misleading statements." *General Mills, Inc.*, 2007 WL 4762172, *2 (citing Cal. Bus. & Prof. Code § 17500). "California courts have recognized that '[a]ny violation of the false advertising law … necessarily violates' the UCL." *Kasky v. Nike*, 27 Cal. 4th 939, 950, 119 Cal. Rptr. 2d (2002). "Thus, to state a claim under either the UCL or the false advertising law, or based on false advertising or promotional practices, it is necessary only to show that members of the public are likely to be deceived." *Id.*

**3. California's CLRA**

The CLRA "provides protection for consumers against unfair and deceptive business practices." *General Mills, Inc.*, 2007 WL 4762172, *2 (citing Cal. Civ. Code § 1750, *et seq.*) The CLRA makes unlawful certain "unfair methods of competition and unfair or deceptive acts or practices" used in the sale of goods or serves to a consumer. Cal. Civ. Code § 1770(a). Plaintiff claims that Defendants' conduct violates subsections (a)(5) and (a)(7) of section 1770, which provide, in pertinent part:

> (5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, benefits, or quantities which they do not have[.]
>
> (7) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another.

Compl., at ¶¶ 129-30.

**4. Uniform Standard of Review**

To state a cause of action under the UCL, FAL and the CLRA, Plaintiff must allege – and the claims turn on – whether the statements at issue – here, Defendants' labeling – are likely to deceive a reasonable consumer. *McKinnis v. Kellogg USA*, No. CV 07-2611, 2007 WL 4766060 (C.D. Cal. Sept. 19, 2007); *see also Freeman v. Time, Inc.*, 68 F.3d 285, 288-89 (9th Cir. 1995) (noting claims under 17200, 17500 and CLRA necessarily turn on whether statements were likely to mislead reasonable consumer); *Consumer Advocates v. Echostar Satellite Corp.*, 113 Cal. App. 4th 1351, 1358-60 (2003) (applying reasonable consumer standard to claims under fraudulent prong of section

17200, section 17500, and CLRA).[4] "The term 'likely' indicates that deception must be probable, not just possible." *Id.* (citing *Freeman*, 68 F.3d at 289).

"If an alleged misrepresentation would not deceive a reasonable consumer or amounts to mere puffery, then any cause of action having deception as an element may be addressed, as a matter of law, on a motion to dismiss." *Id.* (citing *Haskell v. Time, Inc.*, 857 F. Supp. 1392, 1399 (E.D. Cal. 1994)); *see also General Mills, Inc.*, 2007 WL 4762172, *2. "The primary evidence in a matter alleging a misleading statement on a product packaging is the packaging itself." *Id.*; *see also General Mills, Inc.*, 2007 WL 4762172, *2.

**B. Plaintiff's Allegations Fail to Demonstrate That Defendants' Labels Would Likely Deceive A Reasonable Consumer**

To analyze whether Defendants' labels are likely to deceive a reasonable consumer, *McKinnis v. Sunny Delight Beverages Co.*, No. CV 07-20234, 2007 WL 4766525 (C.D. Ca. Sept. 4, 2007)[5] should apply here because it involves virtually identical facts and claims regarding beverages. In *Sunny Delight*, the district court granted the defendant's motion to dismiss because the plaintiff failed to show, under the UCL, FAL and CLRA, that a reasonable consumer would be deceived by depictions of fruit on the defendant's beverage product labels. 2007 WL 4766525, *5. The plaintiff claimed that the terms and images of various beverages (such as "Orange Fused Pineapple" and "Orange Fused Peach") on the defendant's packaging and labels were deceptive because they "imply that a significant amount of fruit or fruit juice is contained in the products[,]" "that its beverages have a high fruit content[,]" and "creates the impression that [the defendant's] product is a genuine fruit drink." *Id.* at *3.

In dismissing the complaint, the district court noted that the labels at issue, although containing pictures of fruit, also "indicate[d] that the product … is not fruit juice but merely flavored with concentrated fruit juices." *Id.* at *4. The trial court found that the labels "list water and high

---

[4] There is authority that stands for the proposition that, to the extent a plaintiff seeks redress for fraudulent business practices, that plaintiff must demonstrate an "injury in fact and has lost money or property as a result of such unfair competition." *See* Prop. 64, §3 (2004). Thus, it appears that a plaintiff has standing to sue under fraudulent business practices if and only if that plaintiff was actually misled.

[5] Within days of dismissing Sunny Delight, the Central District of California also dismissed two other cases by the same plaintiff asserting nearly identical claims against food manufacturers General Mills, Inc., No. CV 07-2521, 2007 WL 4762172 (C.D. Cal. Sept. 18, 2007), and Kellogg USA, No. CV 07-2611, 2007 WL 4766060 (C.D. Cal. Sept. 19, 2007).

fructose corn syrup as the most prominent ingredients." *Id.* The court held that "the depiction of fruit on a product label is not a specific affirmation that a product contains a particular amount of fruit … [or] *any fruit at all*." *Id.* (emphasis in original). Citing to regulatory authority, the court further held that "illustrations of fruit on product labels to indicate that product's 'characterizing flavor[,]' even where the product contains no ingredients derived from the depicted fruit[]" is permissible. *Id.* (citing 21 C.F.R. 101.22(i)(1)(i-iii)).

The court concluded that "no reasonable consumer, upon review of the label as a whole … would conclude that defendant's products contain significant quantities of fruit or fruit juice, particularly when the label identifies the product as fruit 'flavored' and indicates the exact fruit content on each product." *Id.* at *4. Indeed, "[w]here a consumer can readily and accurately determine the composition and nutritional value of a product (here, by reading the front and back of the label), no reasonable consumer would be misled or deceived by depictions of fruit on the label." *Id.* "A reasonable consumer who makes even a cursory review of the product labels … would find not only the precise fruit content of [the] products, but also that [the] products are fruit 'flavored' and contain minimal quantities of concentrated fruit juice." *Id.*

> In *Williams v. Gerber Prods. Co.*, __ F.3d __, 2008 WL 1776522 (9th Cir. Apr. 21, 2008), the Ninth Circuit addressed the plausibility of a complaint for alleged deception. The court reversed the trial court's decision to dismiss the complaint in large part because "a busy parent" while "walking through the aisles of a grocery store" should not "be expected to verify the representations on the front of the box" by reviewing the ingredient list. *Id.* at *4. In so ruling, the *Gerber* decision in effect did not apply the well-established standard of an objectively reasonable consumer but instead applied a subjective standard. *Gerber*, however, did not expressly overrule the standard enunciated in *Freeman* but, instead, seemingly carved out an exception to that objective standard. [6]

The compelling facts in *Gerber*, which apparently drove the Circuit Court to apply a different standard, are not present in this case. For instance, the products at issue here are not are not designed for a specific customer or targeted to a particular consumer. Defendants' beverages are marketed to everyone, adults and children alike. There are no extraordinary circumstances pled in

[6] The decision in *Gerber* did not concern preemption at all as that issue was never raised until Gerber raised the argument in a reply on appeal. *Id.* at *2. The Ninth Circuit initially refused to address preemption but Gerber's petition for a rehearing raises preemption. See Request for Judicial Notice, Exh. C.

the Complaint to justify Plaintiff's admitted failure to read the ingredients thereby requiring this Court to deviate from the established reasonable consumer standard. Those unique factors were a driving force in the *Gerber* decision. *Id.* at *4.

It is respectfully submitted that the *Gerber* decision is limited in scope so as to apply to compelling or unique circumstances not present here. To apply the *Gerber* standard would work an injustice.

**VI.**

**<u>CONCLUSION</u>**

Plaintiff's complaint is barred by the doctrine of preemption and, in any event, is based upon scant allegations of alleged deception and unfairness. No reasonable consumer, concerned about his/her health, after examining a company's website (which depicts the products and their ingredients) would be able to convince a fact finder that they were deceived in this case. This is especially true when that same consumer implicitly acknowledges that, had he/she bothered to read the ingredients on the label, no such deception would have taken place. Under no set of facts, no matter how favorably they are read, can Plaintiff demonstrate that the labels at issue are inherently misleading such that they are likely to deceive consumers. For the foregoing reasons, the Complaint should be dismissed in its entirety with prejudice.

Dated: July 18, 2008

**WILSON PETTY KOSMO & TURNER LLP**

By: s/Meryl C. Maneker
Vickie E. Turner
Meryl C. Maneker
Hubert Kim
mmaneker@wpkt.com

**McELROY, DEUTSCH, MULVANEY & CARPENTER, LLP**

Robert P. Donovan
*Appearing Pro Hac Vice*
Ryan P. Mulvaney
*Appearing Pro Hac Vice*
Attorneys for Defendants
ARIZONA BEVERAGE CO., LLC HORNELL BREWING COMPANY, INC., and FEROLITO VULTAGGIO & SONS, INC