BAKER LAW PC
G. Richard Baker (SBN 224003)
700 Twenty-Ninth Street South
201 Avon Place
Birmingham, Alabama 35233
205-714-7166
Richard@Bakerlawpc.com

JACKSON, TUCKER & ANGWIN PC
Edward E. Angwin (pro hac vice motion pending)
K. Steven Jackson (pro hac vice motion pending)
Joseph L. Tucker (pro hac vice motion pending)
2229 First Avenue North
Birmingham, Alabama 35203
205-252-3535

LAW OFFICE OF ANNA DEAN FARMER, PC
Anna Dean Farmer
440 Louisiana, Suite 900
Houston, Texas 77002
713-965-0095

THE GILBERT LAW FIRM
Christopher K. Gilbert
2223 Cheshire Lane
Houston, Texas 77018
832-541-3747

Attorneys for Plaintiff Heidi Hitt

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HEIDI HITT, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br>v.<br><br>ARIZONA BEVERAGE COMPANY, *et al.*,<br><br>Defendants. | Case No. 08-CV-0809 WQH POR<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO DISMISS**<br><br>Complaint filed May 2, 2008<br><br>Date: September 15, 2008<br>Time: 11:00 a.m.<br>District Judge: Hon. William Q. Hayes<br><br>Trial date: Not set |

## TABLE OF CONTENTS


TABLE OF AUTHORITIES. . . . . ii

INTRODUCTION. . . . . 1

FACTUAL AND REGULATORY BACKGROUND. . . . . 1

I. THE FDCA AND THE NLEA'S PREEMPTION PROVISION. . . . . 2

II. "ALL NATURAL," HIGH FRUCTOSE CORN SYRUP, AND "FRUIT" BEVERAGES. . . . . 4

ARGUMENT. . . . . 6

I. MS. HITT'S CLAIMS ARE NOT PREEMPTED. . . . . 7

A. Fundamental Preemption Principles. . . . . 7

B. Ms. Hitt's Claims Are Not Expressly Preempted.. . . . . 8

C. The NLEA Forecloses Implied Preemption.. . . . . 9

1. As The Statute States, FDA Does Not Occupy The Field Of Food Labeling. . . . . 10

2. Ms. Hitt's Claims Do Not Frustrate Any Federal Objective.. . . . . 12

II. THE COMPLAINT STATES CLAIMS UNDER CALIFORNIA LAW.. . . . . 15

CONCLUSION. . . . . 19

# TABLE OF AUTHORITIES


**CASES** **Pages**

*Animal Legal Defense Fund v. Provini Veal Corp.*,
626 F. Supp. 278 (D. Mass. 1986). . . . . 15

*Bates v. Dow AgroSciences*,
544 U.S. 431 (2005). . . . . 8

*Chicago & N.W. Transportation Co. v. Kalo Brick & Tile Co.*,
450 U.S. 311 (1981). . . . . 8

*Cipollone v. Liggett Group*,
505 U.S. 504 (1992). . . . . 7, 11

*Cohen v. McDonald's Corp.*,
808 N.E.2d 1 (Ill. App. Ct. 2004). . . . . 14, 15

*Conley v. Gibson*,
355 U.S. 41 (1957). . . . . 7

*English v. General Electric Co.*,
496 U.S. 72 (1990). . . . . 7, 8, 11

*FTC v. Cyberspace.com LLC*,
453 F.3d 1196 (9th Cir. 2006). . . . . 18

*In re Farm Raised Salmon*,
175 P.3d 1170 (Cal. 2008), *petition for cert. filed* (U.S. Apr. 18, 2008). . . . . 10, 11, 12

*Fellner v. Tri-Union Seafoods*, LLC,
__ F.3d __, 2008 WL 3842925 (3d Cir. Aug. 12, 2008). . . . . 12, 13, 14

*Fraker v. KFC Corp.*,
2007 WL 1296571 (S.D. Cal. Apr. 30, 2007). . . . . 10, 11

*Freeman v. Time, Inc.*,
68 F.3d 285 (9th Cir. 1995). . . . . 16

*Freightliner Corp. v. Myrick*,
514 U.S. 280 (1995). . . . . 13

*Geier v. American Honda Motor Corp.*,
529 U.S. 861 (2000). . . . . 12

*Glow Industrial, Inc. v. Lopez*,
252 F. Supp. 2d 962 (C.D. Cal. 2002). . . . . 16

*Gregory v. Ashcroft*,
501 U.S. 452 (1991). . . . . 8

*Hawaiian Airlines, Inc. v. Norris*,
512 U.S. 246 (1994). . . . . 7

*Hillsborough County v. Automated Medical Laboratories, Inc.*,
471 U.S. 707 (1985). . . . . . . . . . 8, 14

*Holk v. Snapple*,
2008 WL 2446844 (D.N.J. June 13, 2008),
*appeal docketed*, No. 08-3060 (3d Cir. July 18, 2008). . . . . . . . . . 9, 11

*Humble v. Boeing Co.*,
305 F.3d 1004 (9th Cir. 2002). . . . . . . . . . 16

*Johnson & Johnson * Merck Consumer Pharmaceuticals Co. v. Smithkline Beecham Corp.*,
960 F.2d 294 (2nd Cir. 1992). . . . . . . . . . 16

*Jones v. Rath Packing Co.*,
430 U.S. 519 (1977). . . . . . . . . . 8

*McCulloch v. Maryland*,
17 U.S. (4 Wheat.) 316 (1819). . . . . . . . . . 7

*McKinniss v. Kellogg USA*,
2007 WL 4766060 (C.D. Cal. Sept. 19, 2007). . . . . . . . . . 18

*McKinniss v. General Mills, Inc.*,
2007 WL 4762172 (C.D. Cal. Sept. 18, 2007). . . . . . . . . . 18

*McKinniss v. Sunny Delight Beverages Co.*,
2007 WL 4766525 (C.D. Cal. Sept. 9, 2007). . . . . . . . . . 17

*Medtronic, Inc. v. Lohr*,
518 U.S. 470 (1996). . . . . . . . . . 7

*New York State Restaurant Association v. New York City Board of Health*,
509 F. Supp. 2d 351 (S.D.N.Y. 2007) . . . . . . . . . . 9, 12

*Silkwood v. Kerr-McGee Corp.*,
464 U.S. 238 (1984). . . . . . . . . . 8

*Societe Des Produits Nestle, S.A. v. Casa Helvetia, Inc.*,
982 F.2d 633 (1st Cir. 1992). . . . . . . . . . 18

*Sprietsma v. Mercury Marine*,
537 U.S. 51 (2002). . . . . . . . . . 8, 11, 12, 13

*Stoner v. Santa Clara County Office of Education*,
502 F.3d 1116 (9th Cir. 2007). . . . . . . . . . 6

*U.S. National Bank of Oregon v. Independent Insurance Agents of America*,
508 U.S. 439 (1993). . . . . . . . . . 3

*Williams v. Gerber*,
523 F.3d 934 (9th Cir. 2008), *petition for rehearing filed*. . . . . . . . . . 1, 15, 16, 18

*Wisconsin Public Intervenor v. Mortier*,
501 U.S. 597 (1991). . . . . . . . . . 11

## FEDERAL STATUTES AND LEGISLATIVE MATERIALS


21 U.S.C. §§ 332-334.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

21 U.S.C. § 341 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

21 U.S.C. § 342. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

21 U.S.C. § 343. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

21 U.S.C. § 343(a)(1).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

21 U.S.C. § 343(i). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 6, 14

21 U.S.C. § 343(q). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

21 U.S.C. § 343-1(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 9, 11

21 U.S.C. § 343-1 note.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

21 U.S.C. § 346. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

21 U.S.C. § 371. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Nutrition Labeling and Education Act,
Pub. L. No. 101-535, 104 Stat. 2353 (1990). . . . . . . . . . . . . . . . . . . . . . . . . 2
Section 6(c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3, 9, 11, 12

136 Cong. Rec. H12951-02 (Oct. 26, 1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

136 Cong. Rec. S16607-02 (Oct. 24, 1990).. . . . . . . . . . . . . . . . . . . . . . . . . . . 3


## STATE STATUTES


Cal. Bus. & Prof. Code § 17200. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Cal. Bus. & Prof. Code § 17500. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Cal. Civ. Code § 1770(a)(5), (a)(7). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15


## RULES AND REGULATORY MATERIALS


21 C.F.R. § 101.22. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

21 C.F.R. § 101.30. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 14

21 C.F.R. § 101.30(c).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

21 C.F.R. § 10.85(d). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 12

21 C.F.R. § 10.85(j). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 12

21 C.F.R. § 10.85(k). . . . . . . . . . . . . . . . 5

56 Fed. Reg. 30452 (1991).. . . . . . . . . . . . . . . . 6

56 Fed. Reg. 60421 (1991).. . . . . . . . . . . . . . . . 4

56 Fed. Reg. 60528 (1991).. . . . . . . . . . . . . . . . 10

58 Fed. Reg. 2302 (1993).. . . . . . . . . . . . . . . . 4, 13

58 Fed. Reg. 2462 (1993).. . . . . . . . . . . . . . . . 10

58 Fed. Reg. 2897 (1993).. . . . . . . . . . . . . . . . 6, 13, 14

60 Fed Reg. 57076 (1995). . . . . . . . . . . . . . . . 14


**MISCELLANEOUS**


Burk, *The Milk-Free Zone: Federal and Local Interests,*
22 Colum. J. Envtl. L. 227 (1997). . . . . . . . . . . . . . . . 10

*HFCS is not "natural," says FDA,*
FoodNavigator-USA.com, Apr. 2, 2008,
www.foodnavigator-usa.com/news/ng.asp?n=84404&m=1FNU402&c=edtytbe. . . . . . . . . . 5

Laura Sims, *The Politics of Fat: Food and Nutrition Policy in America* (1998). . . . . . . . . . . 2

USDA, Food Standards and Labeling Policy Book (Aug. 2005). . . . . . . . . . . . . 4

## INTRODUCTION

This case was brought under California consumer protection statutes, seeking damages and injunctive relief against AriZona Beverage Company and related defendants (hereinafter collectively referred to as "AriZona") for labeling and promoting certain of their beverages as "natural" or "all natural," when they in fact contain one or more non-natural ingredients, such as high fructose corn syrup ("HFCS"). The complaint also alleges claims based on AriZona's misleading use of the names of particular fruits in the names and promotion of beverages that do not contain any significant amount (or any at all) of the named fruit. AriZona has moved to dismiss, arguing that Ms. Hitt's claims are expressly preempted by federal law, impliedly preempted because federal law occupies the field of beverage labeling, and impliedly preempted because the claims would interfere with the accomplishment of federal objectives. AriZona also argues that the complaint fails to state a claim under California law because no reasonable consumer would be deceived by the beverage labels—"after examining the company's website." Def. Mem. 21.

Each of these arguments lacks merit. The express preemption theory fails because express preemption requires a statutory preemption provision, and yet AriZona has neglected to identify any such provision, much less to explain its applicability here. Both implied preemption arguments can be quickly rejected because Congress has directed that the federal food labeling laws "shall not be construed to preempt any provision of State law, unless such provision is expressly preempted" by the statute. Pub. L. No. 101-535, § 6(c), 104 Stat. 2535, 2364 (1990). Finally, given the nature of the labels' misrepresentations and statements on the company's website, this case does not present one of those "rare situations" in which granting a motion to dismiss on deceptive business practices claims is appropriate. *Williams v. Gerber*, 523 F.3d 934, 939 (9th Cir. 2008).[1]

## FACTUAL AND REGULATORY BACKGROUND

AriZona's motion primarily argues that Ms. Hitt's claims are preempted by federal regulation of beverage labels. Accordingly, section I below offers a brief description of the regulatory scheme and statutory provisions addressing preemption under the food labeling laws, which provide the

[1] AriZona has requested oral argument. Def. Mem. 1 n.2. Because AriZona's motion so plainly lacks merit, oral argument may be unnecessary.

backdrop for the preemption analysis. Section II provides background about the factual issues in the case, particularly as they relate to federal regulation.

## I. THE FDCA AND THE NLEA'S PREEMPTION PROVISION

Under the Food, Drug, and Cosmetics Act ("FDCA"), the Food and Drug Administration ("FDA") has authority to regulate certain aspects of food safety and labeling. *See* 21 U.S.C. § 371. The FDA can set food definitions and standards of quality, *id.* § 341, establish tolerance levels for poisonous or deleterious substances in food, *id.* § 346, and initiate enforcement proceedings against manufacturers of adulterated or misbranded food. *Id.* §§ 332-334; *see id.* § 342 (defining "adulterated"), § 343 (defining "misbranded"). A food may be deemed misbranded if its labeling is "false or misleading in any particular," *id.* § 343(a)(1), or if its label does not contain required nutrition information (such as serving size, number of servings per container, or total number of calories). *Id.* § 343(q).

In 1990, Congress enacted the Nutrition Labeling and Education Act, Pub. L. No. 101-535, 104 Stat. 2353, 2364 (1990) ("NLEA"), which is codified as part of the FDCA. The NLEA is the basis for FDA regulation of nutrition labels. Among other things, the NLEA requires that nutrition labeling be placed on most packaged food, prohibits the use of terms that characterize the level of nutrients in a food unless they conform to definitions established by the FDA, and ensures that claims about the relationship between nutrients and health conditions are supported by significant scientific agreement.

In enacting the NLEA, Congress devoted careful attention to the subject of preemption. *See* Laura Sims, *The Politics of Fat: Food and Nutrition Policy in America* 199 (1998) ("The preemption issue remained a key area of dispute throughout consideration of the food labeling bill, with the basic issue being how far the legislation should go in setting uniform food labeling regulations that preempt state laws."). In the final moments of the floor debate before the NLEA was formally adopted by the House after its passage in both chambers, Representative Waxman explained that a narrow pre-emption provision had been added to the bill to induce the food industry to support the legislation. 136 Cong. Rec. H12951-02, H12954 (Oct. 26, 1990) ("[I]t was decided that the fairest way to expect the food industry to support a nutrition labeling bill, was to give them some types of preemption of

some burdensome State laws that interfered with their ability to do business in all 50 States."). The leading proponent of stronger federal preemption, Senator Orrin Hatch, agreed that "the carefully crafted uniformity section of this legislation is limited in scope." 136 Cong. Rec. S16607-02, S16611 (Oct. 24, 1990).

The express preemption provision of the NLEA is codified at 21 U.S.C. § 343-1(a). Under that section, state "requirements" that are "not identical" to federal requirements addressing specified topics are preempted. For example, states may not impose a standard of identity on a food subject to an FDA standard of identity, unless the state standard is identical to the federal standard. *Id.* § 343-1(a)(1). And states may not impose requirements related to nutrition labeling (the statement of serving size, calories, etc., required on food packages) or requirements regarding labeling that characterizes the level of nutrients or makes health claims related to nutrients, unless those state requirements are identical to federal requirements. *Id.* § 343-1(a)(4)-(5).

In an effort to satisfy industry concerns while remaining "sensitive to the regulatory roles played by the States," the preemption provision was "refined to provide national uniformity where it is most necessary, while otherwise preserving State regulatory authority where it is appropriate." 136 Cong. Rec. at S16609 (Sen. Mitchell); *see also* 136 Cong. Rec. at S16611 (Sen. Hatch) ("[T]he compromise makes clear that the national uniformity in food labeling that is set forth in the legislation has absolutely no effect on preemption of State or local requirements that relate to such things as warnings about foods or components of food."). To make clear that, aside from § 343-1(a), the new labeling laws would "otherwise preserv[e] State regulatory authority," Congress added a statutory provision limiting the preemptive effect of the NLEA to state laws that fall within the NLEA's express preemption provision:

> The Nutrition Labeling and Education Act of 1990 shall not be construed to preempt any provision of State law, unless such provision is expressly preempted under section 403A [21 U.S.C. § 343-1(a)] of the Federal Food, Drug, and Cosmetic Act.

Pub. L. No. 101-535, § 6(c), 104 Stat. 2535, 2364 (21 U.S.C. § 343-1 note).[2]

---

[2] Although section 6(c) was not codified in the United States Code, it is part of the enacted statute. *U.S. Nat'l Bank of Or. v. Indep. Ins. Agents of Am.*, 508 U.S. 439 (1993) ("Though the appearance of a provision in the current edition of the United States Code is 'prima facie' evidence that the

AriZona's motion to dismiss does not rely on § 343-1(a) or identify any paragraph of § 343-1(a) that expressly preempts Ms. Hitt's claims. The only provision that addresses fruit juice is paragraph 2, which provides that states may not impose non-identical requirements of the type required by § 343(i), which in turn provides that beverages purporting to contain fruit juice must prominently disclose the percentage of juice contained in the beverage.

## II. "ALL NATURAL," HIGH FRUCTOSE CORN SYRUP, AND "FRUIT" BEVERAGES

AriZona suggests that three related aspects of FDA regulation, or non-regulation, are relevant here: the agency's view regarding terms such as "all natural" in beverage labeling, the agency's view regarding whether HFCS is "natural," and FDA regulations regarding labeling of beverages purporting to contain fruit juice.

**A.** The FDA does not define or regulate use of the terms "natural" or "all natural." However, the FDA recognizes that "natural" is used to convey that a food is somehow "more wholesome," and that "'natural' claims are confusing and misleading to consumers and frequently breach the public's legitimate expectations about their meaning." 56 Fed. Reg. 60421, 60466 (1991); *see* 58 Fed. Reg. 2302, 2407 (1993). "[B]ecause of resource limitations and other agency priorities," the FDA has not yet defined "natural" or "all natural," although doing so could "abate" "the ambiguity" that "results in misleading claims." 58 Fed. Reg. at 2407. Although the FDA has no definition, it follows a policy of not taking enforcement action charging that a product labeled as "natural" is misbranded, as long as the product has no added color, synthetic substances, or flavors. (Natural and artificial flavors are defined in 21 C.F.R. § 101.22.) 58 Fed. Reg. at 2407. Under the agency's policy, "natural" mans that "nothing artificial or synthetic has been included in, or added to, a food that would not normally be expected to be in the food." *Id.*; *see also* USDA, Food Standards and Labeling Policy Book 116 (Aug. 2005), *available at* www.fsis.usda.gov/OPPDE/larc/ Policies/Labeling_Policy_Book_082005.pdf ("natural" denotes that "product and its ingredients are not more than minimally processed"). This policy is binding on the agency in that the agency will not "recommend legal action against a person or product with respect to an action taken in conformity" with it. 21 C.F.R. § 10.85(d). However,

---

provision has the force of law, 1 U.S.C. § 204(a), it is the Statutes at Large that provides the 'legal evidence of law'[.]").

the policy does not establish any legal requirements for food or beverage companies. 21 C.F.R. § 10.85(j).

**B.** AriZona beverages contain HFCS, but AriZona labels and promotes the products as "all natural" or "100% natural." Complaint ¶ 23. HFCS does not occur in nature; it is a highly processed substance. Complaint ¶¶ 29-35. The chemical process that creates HFCS was created in 1957. *Id.* ¶ 34. Food and beverage manufacturers often prefer HFCS to sweeteners such as sugar because it is easier to blend and transport, can have a longer shelf-life, and is often cheaper. *Id.* ¶ 33.

The FDA has no official position on whether HFCS is "natural." Recently, an employee in the FDA's Office of Nutrition, Labeling and Dietary Supplements stated to a reporter that the FDA "would object to the use of the term 'natural' on a product containing HFCS." *See HFCS is not "natural," says FDA*, FoodNavigator-USA.com, Apr. 2, 2008, www.foodnavigator-usa.com/news/ng.asp?n=84404&m=1FNU402&c=edtytbe. After the Corn Refiners Association met with the FDA and asked the FDA to that statement, the same FDA employee sent a letter stating that whether the agency would consider HFCS "natural" would depend on the particular process used to manufacture the HFCS. Def. Mem. at Exh. B (FDA letter). Thus, according to the letter, some products containing HFCS could be called "natural" and others could not. *Id.* Exh. B at 2.[3]

This letter (assuming it is properly considered on a motion to dismiss) suggests that, in the view of that particular FDA employee, whether AriZona beverages containing HFCS may truthfully be called "all natural" is a factual question involving consideration of the process used to manufacture the particular type of HFCS used in AriZona beverages. However, neither the statement to the reporter nor the letter to the Corn refiners Association establish any formal FDA position on the question whether HFCS is "natural." *See* 21 C.F.R. § 10.85(k) (statement by an FDA employee that is not advisory opinion issued under §§ 10.85 or 10.90 "is an informal communication that represents the best judgment of that employee at that time but does not constitute an advisory opinion, does not

---

[3] In their motion to dismiss, AriZona asks this Court to consider two letters that are outside the pleadings. Ms. Hitt does not believe that these letters, which are not referred to in the complaint, are appropriately considered on a Rule 12(b)(6) motion to dismiss. However, as discussed herein, even if the Court considers the material, it supports Ms. Hitt's position, not AriZona's.

necessarily represent the formal position of the FDA, and does not bind or otherwise obligate or commit the agency to the views expressed"). The FDA has no official view on the question.

**C.** The FDA does not regulate use of specific fruit names in the names of beverages. The FDCA provides that, if a beverage purports to contain fruit—including by using the name of a fruit in the product name—the label must prominently disclose the percentage of fruit contained in the product. 21 U.S.C. § 343(i); *see* 21 C.F.R. § 101.30. If the product contains only minor amounts of fruit juice for flavoring and the label uses a descriptive word such as "flavoring," the label may omit the percentage disclosure. 21 C.F.R. § 101.30(c). The statutory provision and the implementing regulation regarding disclosure of juice content were motivated by concern that beverage labels naming or depicting fruits were misleading to consumers with regard to the overall juice content and the healthiness of the product. *See generally* 58 Fed. Reg. 2897 (1993) (final rule); 56 Fed. Reg. 30452 (proposed rule). FDA regulations do not address labeling and promotion that represents that a product contains a particular fruit that is not in fact contained in that product.

The AriZona beverages at issue are labeled and promoted to suggest that they contain specific fruits that in fact are not contained in or contained only in minimal amounts in those beverages. For example, AriZona's "Low Carb Blueberry Green Tea" does not list blueberries in the ingredients. Yet AriZona's website, in advertising this particular beverage, represents that the product contains "sweet blueberries" and touts the purported health benefits of blueberries, thereby reinforcing the false impression created by the product name that the product contains blueberries. *See* www.drinkarizona.com ("Diet Blueberry Green Tea. Premium brewed green tea? Check. Sweet blueberries full of antioxidants? Check."). With regard to the "White Cranberry and Apple" tea, the nutrition label states that the beverage contains no juice, but the website describes the beverage as a "carefully crafted blend of smooth green tea, crisp white cranberry and sweet apple." *Id.*

**ARGUMENT**

On a motion to dismiss, "[a]ll allegations of material fact in the complaint are taken as true and construed in the light most favorable to the plaintiff." *Stoner v. Santa Clara County Office of Educ.*, 502 F.3d 1116, 1120 (9th Cir. 2007). A court should only dismiss a complaint if it "appears beyond

doubt that the Plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

## I. MS. HITT'S CLAIMS ARE NOT PREEMPTED.

Taking a kitchen-sink approach, AriZona argues that plaintiff's claim are expressly preempted, are impliedly preempted because the FDA has occupied the field of beverage labeling, and are impliedly preempted because they pose an obstacle to the accomplishment of federal objectives. AriZona is wrong on each point.

### A. Fundamental Preemption Principles

The federal preemption doctrine has its origin in the Supremacy Clause, article VI, clause 2 of the Constitution of the United States, which provides the constitutional authority for the proposition that conflicts between federal and state law are resolved in favor of federal law. *See McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 427 (1819); *Cipollone v. Liggett Group,* 505 U.S. 504, 516 (1992). Preemption can be express or implied. Preemption is "express" if a federal statute explicitly addresses the domain of state law that is or is not preempted, and it is implied if the structure and purpose of federal law, but not its actual words, preempt state law. *See Cipollone*, 505 U.S. at 516. The implied preemption doctrine is itself divided into two types: field preemption and implied preemption. Field preemption applies where a state law seeks to "regulate[] conduct in a field that Congress intended the Federal Government to occupy exclusively." *English v. General Elec. Co.*, 496 U.S. 72, 79 (1990). Conflict preemption is further subdivided into two types, one based on the impossibility of complying with both federal and state law and the other based on the notion that the state law frustrates the purposes of the federal law.

The preemptive scope of the Supremacy Clause is restricted by other constitutional principles implicit and explicit in the constitutional plan. In particular, the Tenth Amendment reserves to the States the powers not delegated to the federal government by the Constitution, nor prohibited by it to the States. In light of this constitutional imperative of federalism, courts recognize a strong presumption *against* preemption that may be overcome only by "clear and manifest" congressional intent to the contrary. *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996); *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 252 (1994). A party seeking preemption of state law thus bears a heavy burden,

for "[p]reemption of state law by federal . . . regulation is not favored 'in the absence of persuasive reasons—either that the nature of the regulated subject matter permits no other conclusion, or that Congress has unmistakably so ordained.'" *Chicago & N.W. Transp. Co. v. Kalo Brick & Tile Co.*, 450 U.S. 311, 317 (1981) (quoting *Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142 (1963)). This approach "provides assurance that the 'federal-state balance' will not be disturbed unintentionally by Congress or unnecessarily by the courts." *Jones v. Rath Packing Co.*, 430 U.S. 519, 525 (1977) (citation omitted). And where, as here, the federal regulatory scheme does not itself provide a damages remedy, the Supreme Court has ascribed preemptive intent to Congress only in the most compelling circumstances. *See English*, 496 U.S. at 87-90; *Silkwood v. Kerr-McGee Corp.*, 464 U.S. 238, 251 (1984).

These anti-preemption precepts are deeply embedded in the "federal-state balance" that is fundamental to the constitutional plan. The strong presumption *against* preemption may be overcome only by "clear and manifest" congressional intent to the contrary. *Hillsborough County v. Automated Med. Labs., Inc.*, 471 U.S. 707 (1985); *Jones*, 430 U.S. at 525. Thus, the Supreme Court's Supremacy Clause jurisprudence is "an acknowledgment that the States retain substantial sovereign powers under our constitutional scheme, powers with which Congress does not readily interfere." *Gregory v. Ashcroft*, 501 U.S. 452, 461 (1991).

Accordingly, even if the answer to the question whether the claims alleged here are preempted were ambiguous, that ambiguity would be resolved in Ms. Hitt's favor. In fact, however, there is no ambiguity; the plain language of the statute demonstrates that Ms. Hitt's claims are neither expressly nor impliedly preempted.

**B. Ms. Hitt's Claims Are Not Expressly Preempted.**

**1.** AriZona first suggests that Ms. Hitt's claims are expressly preempted. Express preemption occurs when a federal statute explicitly states that it supersedes state law. *See, e.g.*, *Bates v. Dow AgroSciences*, 544 U.S. 431, 439 (2005) (quoting express preemption provision); *Sprietsma v. Mercury Marine*, 537 U.S. 51, 58-59 (2002) (quoting express preemption provision). The question in cases involving express preemption is the scope of the preemption language that Congress has enacted. Yet absent from AriZona's express preemption argument (Def. Mem. 11-12) is reference

to any express preemption provision. Because there can be no express preemption without a statutory preemption provision, AriZona's express preemption theory must be rejected.

Misunderstanding the nature of express preemption, AriZona argues that express preemption applies here because "the breadth" of the federal "labeling scheme extends to and expressly covers beverages purporting to contain fruit and characterizing flavors of beverages." Def. Mem. 12. AriZona is correct that the FDA has jurisdiction to regulate various aspects of beverage labeling, but that fact is simply not the basis for an express preemption argument.[4/]

**2.** Although AriZona makes no argument in regard to any express preemption language, the NLEA does have an express preemption provision applicable to certain aspects of food labeling, 21 U.S.C. § 343-1(a). As discussed above, *supra* p. 3, under § 343-1(a), state 'requirements" that are "not identical" to federal requirements on certain specified topics are preempted. Ms. Hitt's claims do not fall within the scope of any provision of § 343-1(a), and, again, AriZona does not argue that § 343-1(a) or any paragraph thereof preempts Ms. Hitt's claims. (AriZona cites § 343-1 only once, in a string cite listing FDA regulations.) If AriZona argues in its reply that a particular provision of § 343-1(a) applies here, Ms. Hitt will seek to file a surreply to address that new argument.

**C. The NLEA Forecloses Implied Preemption.**

AriZona also argues that the state-law claims alleged here are impliedly preempted because the FDA has "occupied the field" of beverage labeling and because the claims "stand as an obstacle to accomplishing federal objectives." Both of these implied preemption theories must be rejected because "[t]he NLEA explicitly forecloses the possibility that state law would be impliedly preempted." *N.Y. State Rest. Ass'n v. N.Y. City Bd. of Health*, 509 F. Supp. 2d 351, 355 (S.D.N.Y. 2007).

Specifically, the NLEA states that it "shall not be construed to preempt any provision of State law, unless such provision is expressly preempted under section 403A [21 U.S.C. § 343-1(a)] of the Federal Food, Drug, and Cosmetic Act." 21 U.S.C. § 343-1 note (Pub. L. No. 101-535, § 6(c), 104

---

[4/] AriZona is incorrect to draw any implication from the decision on *Holk v. Snapple*, 2008 WL 2446844 (D.N.J. June 13, 2008), *appeal docketed*, No. 08-3060 (3d Cir. July 18, 2008). *See* Def. Mem. 12. That opinion holds that claims concerning advertising beverages that contain high fructose corn syrup as "all natural" are not expressly preempted and offers no view about any other claim.

Stat. 2535, 2364 (1990)). As the FDA has explained, this statutory language "clearly manifests Congress's intention" that the NLEA not preempt state law beyond the NLEA's express terms: "If there is no applicable Federal requirement that has been given preemptive status by Congress, there is no competing claim of jurisdiction, and, therefore, no basis under the 1990 amendments for Federal preemption." 56 Fed. Reg. 60528, 60530 (1991).

Thus, Congress has directed and the FDA has recognized that "the *only* State requirements that are subject to preemption are those that are affirmatively different on matters that are covered by section [343-1] of the act." 58 Fed. Reg. 2462 (1993) (emphasis added). In this respect, the NLEA's preemption provisions are "somewhat unusual," in that "[t]he NLEA can be analyzed only in terms of express preemption, because its express provisions prohibit any implied preemption under the statute." Burk, *The Milk-Free Zone: Federal and Local Interests*, 22 Colum. J. Envt'l L. 227, 259 (1997); *accord In re Farm Raised Salmon*, 175 P.2d 1170, 1179 (Cal. 2008), *petition for cert. filed* (U.S. Apr. 18, 2008) (No. 07-1327). Thus, AriZona's implied preemption arguments fail on the basis of the NLEA's express command.

**1. As The Statute States, FDA Does Not Occupy The Field Of Food Labeling.**

The statutory provision discussed above, § 6(c), is dispositive of the implied preemption issue, and the Court need look no further to reject both of AriZona's implied preemption arguments. AriZona does not mention § 6(c) and instead argues for field preemption based on two unreported, district-court cases. Neither case helps AriZona to overcome the plain language of the statute, which makes clear that the NLEA does not occupy the field of food labeling.

First, AriZona focuses on *Fraker v. KFC Corp.*, 2007 WL 1296571 (S.D. Cal. Apr. 30, 2007). There, the plaintiff alleged that KFC's food was misbranded in violation of the FDCA and California's Sherman Act because the food it advertised as healthy was high in trans fat. The court held that the claims were preempted because "they conflict with the exclusive enforcement mechanism provided by Congress." *Id.* at *3. To begin with, the court's opinion does not mention § 6(c), which limits the scope of preemption to the items expressly preempted by § 343-1(a). In addition, in *Fraker*, the defendant argued, and the court agreed, that the plaintiff's claims, which were based on alleged violations of federal regulations, conflicted with the "exclusive enforcement

mechanism provided by Congress." *Id.* The court held that only the FDA can bring suit to enforce compliance with federal regulation, *id.* at *3 (citing 21 U.S.C. § 337(a)), and that the plaintiff's claims would thus interfere with the FDA's "uniform enforcement." *Id.* In contrast, the complaint in this case does not seek to enforce *federal* requirements (it does not even cite federal requirements), but only *state* requirements. *See* Complaint pp. 11-19 (stating causes of action); *see also In re Farm Raised Salmon*, 175 P.3d at 1183 (distinguishing *Fraker* on this basis).[5]

Second, AriZona relies on the district court's decision in *Holk v. Snapple*, in which, again, it does not appear that the court was apprised of § 6(c). *Snapple*'s conclusion that the statute and FDA regulations "thoroughly occupy the field of the beverage labeling at issue," 2008 WL 2446844, at *7, is wrong. Federal law can preempt state law under a field preemption theory only when the "scheme of federal regulation" is "so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it." *English*, 496 U.S. at 79 (citation omitted). No such federal scheme exists here.[6] Rather, the NLEA itself makes plain that Congress did not intend to occupy the field of food labeling in general or beverage labeling in particular. Section 343-1(a) identifies specifically which statutory provisions preempt state law, and § 6(c) states unequivocally that state law outside the scope of § 343-1(a) is not preempted. "Congress' enactment of a provision defining the pre-emptive reach of a statute implies that matters beyond that reach are not pre-empted" under field preemption principles. *Cipollone*, 505 U.S. at 517; *see also Wis. Pub. Intervenor v. Mortier*, 501 U.S. 597, 613 (1991) (express preemption provision would be "pure surplusage if Congress had intended to occupy the entire field"). The NLEA's limited express preemption provision and its anti-preemption provision indisputably manifest that Congress did not intend to displace all state law with regard to food labeling. Field preemption simply does not apply here.

---

[5] In addition, as the California Supreme Court recognized in *In re Farm Raised Salmon*, state-law claims based on state requirements that are identical to federal requirements are not preempted. 175 P.3d 1175 (discussing 21 U.S.C. § 343-1 and citing legislative history and FDA statements).

[6] *Cf. Sprietsma*, 537 U.S. at 69 (no field preemption where Coast Guard authorized to regulate boat safety but statute "does not *require* the Coast Guard to promulgate comprehensive regulations covering every aspect of recreational boat safety and design") (emphasis in original).

**2. Ms. Hitt's Claims Do Not Frustrate Any Federal Objective.**

Notwithstanding Congress's express statement that § 343-1 defines the complete scope of preemption under the federal food labeling laws, AriZona argues that the claims alleged here are impliedly preempted because they pose an obstacle to accomplishing federal objectives. Again, § 6(c) firmly disposes of this argument. *N.Y. State Rest. Ass'n*, 509 F. Supp. 2d at 355; *In re Farm Raised Salmon*, 175 P.2d at 1179. Even without § 6(c), however, AriZona would be mistaken.

Federal law preempts state law when the state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Sprietsma,* 537 U.S. at 64 (citation omitted). Arguing that this theory of preemption applies here, AriZona relies primarily on *Geier v. American Honda Motor Corp.*, 529 U.S. 861 (2000). There, the Supreme Court considered the preemptive effect of a federal regulation, issued after notice-and-comment rulemaking, that addressed in detail the types of passive restraints required and permitted in automobiles. Concluding that the agency "deliberately provided the manufacturer with a range of choices among different passive restraint devices" to "bring about a mix of different devices introduced gradually over time," in an attempt to "lower costs, overcome technical safety problems, encourage technological development, and win widespread consumer acceptance—all of which would promote [the regulation's] safety objectives," *id.* at 875, the Supreme Court held that the plaintiff's claim seeking to hold Honda liable for failing to install one particular passive restraint would frustrate the federal purpose.

This case could not be further from *Geier*. Not only has AriZona failed to identify any statute or regulation that defines "natural" or "all natural," but it concedes that none exists. *See* Def. Mem. 10. Although the FDA has a "policy" that guides its own exercise of enforcement discretion, *see supra* p. 4, that policy does not impose any labeling requirement on any food company. 21 C.F.R. § 10.85(d), (j); *see Fellner v. Tri-Union Seafoods*, LLC, __ F.3d __, 2008 WL 3842925, *10 (3d Cir. Aug. 12, 2008) (FDA guideline stating policy for taking enforcement action does not preempt state law). In contrast to the extensive notice-and-comment rulemaking and lengthy Federal Register notice explaining the agency's goals in formulating the particular safety regulation at issue in *Geier*, here the FDA has deferred taking regulatory action. It has acknowledged that the term "natural" is sometimes used in misleading ways, and that a regulatory definition of the term might be useful, 58

Fed. Reg. at 2407, but, so far, has declined to define the term. *See* Def. Mem. at Exh. A ("Because of resource limitations and other agency priorities, FDA is not undertaking rulemaking to establish a definition for 'natural' at this time."). Ms. Hitt's claims thus would not impede any federal objective with regard to "natural labeling" because the FDA has not expressed a view on this topic in any legally meaningful way. And "the cases leave no doubt that a mere decision not to regulate . . . alone will not preempt state law." *Fellner*, 2008 WL 3842925, *12. At the same time, Ms. Hitt's "natural" claims are fully consistent with the FDA's observation that use of such terms on food labels "may be misleading." 58 Fed. Reg. at 2903 ("no specific prohibition against use" of the term "natural," but FDA "has discouraged use" of the term because it is "ambiguous and may be misleading").

Accordingly, the facts of this case are not analogous to *Geier*, but to *Sprietsma v. Mercury Marine*, 537 U.S. 51. In *Sprietsma*, the Supreme Court considered whether the Coast Guard's decision not to require propeller guards on motor boats impliedly preempted a state-law damages action alleging that the manufacturer's motor boat was unreasonably dangerous because the motor was not protected by a propeller guard. Rejecting the manufacturer's preemption argument, the Court explained that it was "quite wrong" to view the decision not to issue a federal regulation as the "functional equivalent" of a prohibition against state regulation of the subject matter. *Id.* at 65. Rather, that decision was "fully consistent with an intent to preserve state regulatory authority." *Id.*; *see also Freightliner Corp. v. Myrick*, 514 U.S. 280, 289 (1995) (where agency had no standard either requiring or prohibiting antilock brakes, state common-law claim regarding antilock brakes not preempted). Likewise here, the agency's decision not to undertake rulemaking to define "natural" or "all natural" has no preemptive effect. Similarly, the non-binding statements of an individual FDA employee as to whether HFCS is "natural," as that term is used in the FDA's informal policy, do not constitute the formal position of the FDA or commit the FDA to any position, much less evidence a federal objective capable of preempting state law. *See supra* p. 5 (FDA employee first stated to a reporter that HFCS is not "natural" and later stated in a letter that whether HFCS is "natural" depends on production process). As the Third Circuit recently observed, "[W]e have found no case in which a letter that was not the product of some form of agency proceeding and did not purport to impose

new legal obligations on anyone was held to create federal law capable of preemption." *Fellner*, 2008 WL 3842925, * 5. "If there is no Federal requirement to be given preemptive effect, preemption does not occur." 60 Fed Reg. 57076, 57120 (1995) (FDA statement).

Ms. Hitt's claims based on beverage names that specify particular fruits that are not in the product—so-called "No Carb Blueberry Green Tea," for example (Complaint at 2)—are subject to the same analysis. Fruit-containing beverages are addressed in 21 U.S.C. § 343(i) and 21 C.F.R. § 101.30, which require a disclosure of the percentage of fruit in any beverage purporting to contain fruit. Neither the statute nor the regulation, however, require AriZona to give beverages that do not contain blueberries names such as "Blueberry Green Tea" or beverages that do not contain cranberries names such as "White Cranberry and Apple" tea. The federal regulations simply do not evince a federal objective of encouraging beverage companies to use fruits in product names. *See Hillsborough County*, 471 U.S. at 717 ("[M]erely because the federal provisions were sufficiently comprehensive to meet the need identified by Congress did not mean that States and localities were barred from identifying additional needs or imposing further requirements in the field."). Rather, the purpose of the percentage-juice requirements is to ensure that beverages that purport (through names, descriptions, or pictures on labeling or advertising) to contain juice do not mislead consumers by creating a false impression about juice content. *See generally* 58 Fed. Reg. 2897 (discussing reasoning behind rule requiring percentage disclosure). Ms. Hitt's state-law claims, based on California statutes that prohibit false or deceptive advertising or promotion, are fully consistent with and pose no obstacle to the accomplishment of this federal purpose. *See Fellner*, 2008 WL 3842925, *10 (state law not preempted because where FDA had promulgated no pertinent legal standard and where defendant identified no actual conflict between plaintiff's claims and pertinent FDA actions).

*Cohen v. McDonald's Corp.*, 808 N.E.2d 1 (Ill. App. Ct. 2004), on which AriZona relies, is not to the contrary. In *Cohen*, a consumer brought a deceptive business practices act claim, arguing that the nutritional information provided by McDonald's misrepresented the nutritional value of foods such as hamburgers for children under age four, although such foods were intended for those children. The state appellate court held that the claims were preempted, without noting the existence of the anti-preemption provision, § 6(c). In addition, the court's holding turned on its understanding that

the lawsuit "would have this court place labeling requirements on restaurants that provide foods intended for children under the age of three," and that it lacked the "authority" "to interpret a federal statute"—concerns inapplicable here (because the NLEA's restaurant labeling requirements are not at issue and this Court has authority to interpret statutes). *Id.* at 9-10. On the other hand, the court in *Cohen* agreed that a state deceptive practices action that adopted the federal statute or regulations as the standard of conduct would *not* be preempted. *Id.* at 9. Thus, the court recognized that federal law did not preempt the field of food labeling, and that state law does not always pose an obstacle to the accomplishment of federal objectives regarding food labeling.[7]

## II. THE COMPLAINT STATES CLAIMS UNDER CALIFORNIA LAW.

As described above, *supra* pp. 1, 4, 6, the complaint alleges claims with respect to two types of false or misleading labeling and promotion: use of terms such as "all natural" on products that contain HFCS and naming products for particular fruits that are not contained in or contained in only minimal quantities in the beverages. Ms. Hitt states claims under the California Unfair Competition Law (UCL), Cal. Bus. & Prof. Code § 17200 (barring "unfair, deceptive, untrue or misleading advertising"), the False Advertising Law (FAL), Cal. Bus. & Prof. Code § 17500 (barring "untrue or misleading" advertising), and the Consumer Legal Remedies Act (CLRA), Cal. Civ. Code § 1770(a)(5), (a)(7) (prohibiting false representations regarding the ingredients, characteristics, or quality of goods).

AriZona contends that the complaint fails to state a claim under these state laws because the "allegations fail to demonstrate that defendants' labels would likely deceive a reasonable consumer." Def. Mem. 17, 19. As AriZona correctly explains, the "reasonable consumer" test applies to claims under each of these statutes. *See Williams v. Gerber Prods. Co.*, 523 F.3d 934, 938 (9th Cir. 2008), *petition for reh'g filed*. Therefore, to prevail on her claims, Ms. Hitt must "show that members of the

---

[7] AriZona also discusses *Animal Legal Defense Fund v. Provini Veal Corp.*, 626 F. Supp. 278 (D. Mass. 1986). That case addresses preemption under the drug provisions of the FDCA and the Federal Meat Inspection Act ("FMIA"). The decision holds that Congress intended to occupy the field of antibiotic use in animals and that an express preemption provision of the FMIA applies. *Id.* at 285. The decision is inapposite here.

public are likely to be deceived" by the "all natural" representation and/or the fruit names. *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995).

Whether the reasonable consumer will likely be deceived will "usually be a question of fact not appropriate for decision on" a motion to dismiss. *Gerber*, 523 F.3d at 939 (citing *Lineat Tech. Corp. v. Applies Materials, Inc.*, 152 Cal. App. 4th 115, 134-35 (Cal. App. 2007); *McKell v. Washington Mutual*, 142 Cal. App. 4th 1457, 1472 (Cal. App. 2006)). Granting a motion to dismiss claims for deceptive advertising is appropriate only in "rare situation[s]." *Id.* Ms. Hitt should have the opportunity to present evidence, such as a consumer survey, showing that AriZona's labeling and promotion is likely to deceive reasonable consumers. *Cf. Johnson & Johnson * Merck Consumer Pharms. Co. v. Smithkline Beecham Corp.*, 960 F.2d 294, 297-98 (2d Cir. 1992) (consumer survey usually shows what the public perceives an ad's message to be); *Glow Indus., Inc. v. Lopez*, 252 F. Supp. 2d 962, 999 (C.D. Cal. 2002) (survey evidence is probative of consumer confusion in trademark infringement case). This issue should not be decided on a motion to dismiss.

In any event, AriZona has made only the most cursory attempt to argue that its labels and promotion do not deceive reasonable consumers. AriZona describes the statutory standards under California law, and it discusses two cases (one of which, *Gerber*, runs contrary to AriZona's theory), but it offers no argument or analysis in favor of its position. For example, with regard to the "all natural" claims, AriZona cites no authority for the proposition that, as a matter of law, use of "all natural" labeling for products containing HFCS would not deceive a reasonable consumer, and makes no effort to analogize the facts of the cases on which it relies to Ms. Hitt's "natural" claims. Indeed, if not for the conclusory sentence in the "conclusion" section of the memorandum, it would not be clear whether AriZona's argument on this point was intended to reach the "natural" claims. Thus, AriZona's motion to dismiss for failure to state a claim under California law should be rejected with respect to the "all natural" claims. *Cf. Humble v. Boeing Co.*, 305 F.3d 1004, 1012 (9th Cir. 2002) (applying Fed. R. App. P. 28(a)(9)(A), and holding that "[i]ssues raised in a brief but not supported by argument are deemed abandoned," even where appellant had argued same point with respect to another claim).

With respect to Ms. Hitt's claims based on products marketed with names such as "No Carb Blueberry Green Tea" and "No Carb White Cranberry & Apple Green Tea" that do not actually contain substantial amounts of the named fruits, Compl. ¶ 39, AriZona, through its argument heading, seems to limit its argument to the products' labels, Def. Mem. 19, and not to include Ms. Hitt's claims with respect to advertising and promotion. As was true in connection with the "all natural" claims, AriZona's argument does not include any analysis of the law with respect to the "fruit product" claims. Nonetheless, with regard to these claims, AriZona at least cites three cases that involve similar sorts of claims.

AriZona relies primarily on *McKinniss v. Sunny Delight Beverages Co.*, 2007 WL 4766525 (C.D. Cal. Sept. 4, 2007). In that case, the plaintiff brought claims under FAL, UCL, and CLRA, alleging that "the juxtaposition of the names [such as "orange fused peach"] and fruit names with the actual list of ingredients on the product label creates confusion and constitutes misrepresentation of the content . . . which may contain 2% fruit juice or less." *Id.* at *3. Granting a motion to dismiss, the court found that "no reasonable consumer, upon review of the label as a whole, . . . would conclude that the products contain significant quantities of fruit or fruit juice." *Id.* at *4. However, the question in *Sunny Delight* was whether the label misled the consumer about the *quantity* of juice in the product. Here, AriZona's labels and promotion represent that *specific kinds* of fruits are in particular products. Moreover, unlike in *Sunny Delight*, AriZona reinforces the misrepresentations on its website. For example, the misrepresentation that the "Blueberry" beverage contains blueberries is furthered by statements on AriZona's website touting the health benefits of blueberries and stating that blueberries are in the drink. Describing that beverage, AriZona's website states, "Sweet blueberries full of antioxidants? Check." www.drinkarizona.com ("Products"). With regard to the "White Cranberry Apple" tea, the website describes the beverage as a "carefully crafted blend of smooth green tea, crisp white cranberry and sweet apple." *Id.* It is thus ironic that AriZona expressly ties its contention that no reasonable consumer would be deceived by its products' fruit names to its website. Indeed, the only sentence in AriZona's brief that directly argues that no reasonable consumer would be deceived by its fruit names suggests that the reason that no reasonable consumer would be deceived is *because of* its website. Def. Mem. 26 ("No reasonable consumer, concerned

about his or her health, *examining a company's website* . . . would be able to convince a fact finder that they were deceived in this case.") (emphasis added). Thus, even if a website—which many consumers will never visit—could cure misleading product labeling as a matter of law, the website here *compounds* the likelihood that consumers will be misled.

In a footnote, AriZona cites *McKinniss v. Kellogg USA*, 2007 WL 4766060 (C.D. Cal. Sept. 19, 2007), and *McKinniss v. General Mills, Inc.*, 2007 WL 4762172 (C.D. Cal. Sept. 18, 2007). Those cases involved challenges to the names, graphics, and other statements on Froot Loops, Berry Berry Kix, Trix, Fruity Cheerios, and certain yogurts. Although the labels of the products depicted fruit and some of the products had "fruity" names, none were named for actual fruits, and each of the labels prominently disclosed that the foods had "natural fruit flavors" or were "artificially flavored." In that way, the labels made apparent that the fruit names and images referred only to flavoring. By contrast, AriZona's labels do not claim that the products are "fruit flavored" or "artificially flavored" to taste like the named fruit; rather, and in particular "after examining [the] company's website," Def. Mem. 26, AriZona creates the impression that the specified fruit is actually contained in the beverage.

Moreover, AriZona's suggestion that other statements cure the misrepresentation on the front of the label—as a matter of law—is contradicted by the decision in *Gerber*. There, the Ninth Circuit held that "reasonable consumers should not be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box." 523 F.3d at 939-40. As the court explained, the nutrition information required by the FDA "certainly serves some purpose." *Id.* at 940. However, it continued, "[w]e do not think that the FDA requires an ingredient list so that manufacturers can mislead consumers and then rely on the ingredient list to correct those misrepresentations and provide a shield for liability." *Id.* (reasonable consumer "expect[s] that the ingredient list contains more detailed information about that product that confirms other representations on the packaging"). *Cf. FTC v. Cyberspace.com LLC*, 453 F.3d 1196, 1198-1200 (9th Cir. 2006) (fine-print notice disclosing that cashing a check that appeared to be a rebate would constitute agreement to purchase Internet service did not render solicitation non-misleading); *Societe Des Produits Nestle, S.A. v. Casa Helvetia, Inc.*, 982 F.2d 633, 639 (1st Cir.

1992) (package's "overall appearance" can be deceptive "despite the existence of fine print identifying the [product's] true origin").

AriZona has presented no evidence that its drinks contain significant amounts of the named fruits or deliver the advertised health benefits of those fruits, and it has offered no argument why its marketing would not mislead a reasonable consumer into believing that its beverages contain some, and more than a minimal amount, of the specified fruits. Accordingly, this Court should deny the motion to dismiss as to all claims.

## CONCLUSION

For the foregoing reasons, the motion to dismiss should be denied.

Dated: August 29, 2008

BAKER LAW PC

By: /s/ G. Richard Baker
G. Richard Baker (SBN 224003)
Richard@Bakerlawpc.com

JACKSON, TUCKER & ANGWIN PC
Edward E. Angwin (pro hac vice motion pending)
K. Steven Jackson (pro hac vice motion pending)
Joseph L. Tucker (pro hac vice motion pending)

LAW OFFICE OF ANNA DEAN FARMER, PC
Anna Dean Farmer

THE GILBERT LAW FIRM
Christopher K. Gilbert

Attorneys for Plaintiff Heidi Hitt

Of counsel:
Allison M. Zieve
PUBLIC CITIZEN LITIGATION GROUP
1600 20th Street NW
Washington, DC 20009
202-588-1000

<table>
<tr><td colspan="2">UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF CALIFORNIA</td><td rowspan="3">COURT USE ONLY</td></tr>
<tr><td colspan="2">TITLE OF CASE (ABBREVIATED)<br>HEIDI HITT v. ARIZONA BEVERAGE CO., LLC, ET AL.</td></tr>
<tr><td colspan="2">ATTORNEY OR PARTY WITHOUT ATTORNEY (NAME AND ADDRESS): TELEPHONE NO.<br>G. RICHARD BAKER Tel. (205) 714-7166<br>Baker Law PC<br>700 29th Street South<br>Birmingham, Alabama 35233</td></tr>
<tr><td>ATTORNEY FOR:<br>Plaintiff Heidi Hitt</td><td>HEARING DATE – TIME</td><td>CASE NUMBER:<br>08-CV-08809-WQH-POR</td></tr>
</table>

**PROOF OF SERVICE**

At the time of service I was over 18 years of age and not a party to this action. My business is BAKER LAW, P.C., 700 29th Street South, Birmingham, Alabama 35233.

On August 29, 2008, I served the following documents:

1. PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO DISMISS

I served the documents on the person below, as follows:

Robert Donovan, Esquire
Ryan P. Mulvaney, Esquire
MCELROY, DEUTSCH, MULVANEY & CARPENTER, LLP
Three Gateway Center, 100 Mulberry Street
Newark, NJ 07102

K. Stephen Jackson, Esquire
Joseph L. "Josh" Tucker, Esquire
Edward E. Angwin, Esquire
Jackson, Tucker & Angwin, P.C.
2229 1st Avenue North
Birmingham, AL 35203

☐ **By fax transmission.** Based on an agreement of the parties to accept service by fax transmission, I faxed the documents to persons at the fax numbers listed below. No error was reported by the fax machine that I used. A copy of the record of the fax transmission, which I printed out, is attached.

☑ **By United States mail.** I enclosed the documents in a sealed envelope or package addressed to the persons at the addressed below and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with this business's practice for collection and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United Sates Postal Service, in a sealed envelope with postage fully prepaid.

☐ **By overnight delivery.** I enclosed the documents in an envelope or package provided by an overnight delivery carrier and addressed to the persons at the addresses above. I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight delivery carrier.

☑ **By ELECTRONIC SERVICE.** I served the above listed document(s), described above via the Central District of the United States Court's Electronic Filing Program on the designated recipients through electronic transmission through the CM/ECF system on the Court's website. Upon completion of said transmission and filing of said documents, a certified receipt is issued to filing party acknowledging receipt by the Court's CM/ECF system, and once all designated recipients are electronically served, proof of electronic service is returned to the filing party.

Vickie E. Turner, Esquire
Meryl C. Maneker, Esquire
Hubert Kim, Esquire
**WILSON PETTY KOSMO & TURNER LLP**
550 West C. Street, Suite 1050
San Diego, CA 92101

I declare that I am G. Richard Baker of Baker Law, P.C. Executed on August 29TH, 2008, at Birmingham, Alabama.

/s/ G. Richard Baker
G. Richard Baker