WILSON PETTY KOSMO & TURNER LLP
VICKIE E. TURNER (106431)
MERYL C. MANEKER (188342)
HUBERT KIM (204957)
550 West C Street, Suite 1050
San Diego, California 92101
Telephone: (619) 236-9600
Facsimile: (619) 236-9669
**E-mail:** vturner@wpkt.com
**E-mail:** mmaneker@wpkt.com
**E-mail:** hkim@wpkt.com

McELROY, DEUTSCH, MULVANEY & CARPENTER, LLP
ROBERT P. DONOVAN (*Admitted Pro Hac Vice*)
RYAN P. MULVANEY (*Admitted Pro Hac Vice*)
Three Gateway Center
100 Mulberry Street
Newark, New Jersey 07102
Telephone: (973) 622-7711
Facsimile: (973) 622-5314
**E-mail:** rdonovan@mdmc-law.com
**E-mail:** rmulvaney@mdmc-law.com

Attorneys for Defendants
ARIZONA BEVERAGE CO., LLC, HORNELL BREWING COMPANY, INC., and FEROLITO VULTAGGIO & SONS, INC.

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| HEIDI HITT, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,<br><br>Plaintiff,<br><br>v.<br><br>ARIZONA BEVERAGE CO., LLC; HORNELL BREWING COMPANY, INC.; AND FEROLITO VULTAGGIO & SONS, INC.,<br><br>Defendants. | Case No. 08-CV-0809 WQH POR<br><br>**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN REPLY TO PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS**<br><br>Complaint Filed: May 2, 2008<br><br>Date: September 15, 2008<br>Time: 11:00 a.m.<br>Judge: Hon. William Q. Hayes<br>Trial Date: Not Set |

**TABLE OF CONTENTS**


I. *HOLK* AND *FRAKER* ARE DISPOSITIVE ON THE ISSUE OF PREEMPTION ...........1

II. SECTION 6(C) IS NOT PART OF THE FDCA AND HAS NO BEARING UPON THE ISSUES OF PREEMPTION PRESENTED....................................................4

III. THE CASES RELIED UPON BY PLAINTIFF SUPPORT PREEMPTION .....................6

IV. UNDER *TWOMBLY*, THE COMPLAINT SHOULD BE DISMISSED AS IMPLAUSIBLE ON ITS FACE ..........................................................................................8

# TABLE OF AUTHORITIES

## Federal Cases

*Bell Atlantic Corp. v. Twombly*,
____ U.S. ______, 128 S.Ct. 1955 (2007) ........ 8

*Fellner v. Tri-Union Seafoods, LLC*,
__F. 3d__, 2008 WL 1296571 (3d Cir. 2008) ........ 6, 7

*Fraker v. KFC Corp.*,
2007 WL 1296571 (S.D. Cal. 2007) ........ 1, 2

*Holk v. Snapple Bev. Corp.*,
___ F. Supp. 2d ___, 2008 WL 2446844 (D. N.J. 2008) ........ 1, 3

*In re Copper Mt. Sec. Litg.*,
311 F. Supp. 2d 857 (N.D. Cal. 2004). ........ 9

*In re Wet Seal, Inc. Securities Litigation*,
518 F. Supp. 2d 1148 (C.D.Cal. 2007) ........ 9

*McKinnis v. Sunny Delight*,
2007 WL 4766525 (C.D. Cal. 2007) ........ 9

*N.Y. State Restaurant Ass'n v. N.Y. City Board of Health*,
2008 WL 17522455 (S.D.N.Y. 2008) ........ 6

*N.Y. State Restaurant Ass'n v. N.Y. City Board of Health*,
509 F. Supp. 2d 351 (S.D.N.Y. 2007) ........ 6

## State Cases

*In re Farm Raised Salmon Cases*,
42 Cal. 4th 1077 (2008) ........ 7, 8

## Federal Statutes

21 U.S.C. § 337 ........ 4

21 U.S.C. § 341 ........ 4

21 U.S.C. § 341-1 ........ 1

21 U.S.C. § 343-1 ........ 4, 5, 6, 7

21 U.S.C. § 371 ........ 2

## State Statutes

California Business & Professions Code, section 17200 ........ 2, 5

California Business & Professions Code, section 17500 ........ 5

California Civil Code, section 1770 ........ 5

**Regulations**

21 C.F.R. § 1.1 ....................................................................................................3
21 C.F.R. § 10.85 ..................................................................................................2
21 C.F.R. § 102.33 ................................................................................................3
59 FR 2302..........................................................................................................3

In opposing the motion to dismiss filed by defendants, Arizona Beverage Co., LLC ("ABC"), Hornell Brewing Company, Inc. ("Hornell") and Ferolito Vultaggio & Sons, Inc.,[1] plaintiff, Heidi Hitt ("Plaintiff"), fails to adequately address the express preemption provisions of the Food and Drug and Cosmetic Act ("FDCA"), the comprehensiveness of the federal regulatory framework, the Food and Drug Administration's ("FDA") express enforcement authority and Congress' important objectives of national uniformity and consistency in regulating food and beverage labeling. This entire statutory framework, and need for uniformity, serves as a center piece for the Defendants' motion to dismiss. (Def. Mem. Of Law, p. 8-17).

**I.**

**<u>*HOLK* AND *FRAKER* ARE DISPOSITIVE ON THE ISSUE OF PREEMPTION</u>**

Instead, Plaintiff tries to downplay two key federal court decisions, which relied heavily upon the aforementioned comprehensive federal regulatory framework, and which support dismissal of the complaint on preemption grounds. *Holk v. Snapple Bev. Corp.*, ___ F. Supp. 2d ___, 2008 WL 2446844 (D. N.J. 2008) is a reported decision wherein, in response to virtually the same allegations and claims as presented here, the *Holk* Court found such claims barred by the doctrine of implied preemption. Plaintiff's response to *Holk*, which is on all fours with the present case, is a conclusory and facile assertion that the *Holk* decision is "wrong". (See Plaintiff's Mem. Opp., p. 11.) Contrary to this transparently dismissive argument, the decision in *Holk* is well reasoned, relies upon 21 U.S.C. § 341-1, details at length the comprehensive rules and regulations governing food labeling and demonstrates conclusively that the FDA has fully occupied the field for which Plaintiff seeks to litigate in this Court. (*Holk*, 2008 WL 2446844 *4-7.)

Likewise, in *Fraker v. KFC Corp.*, 2007 WL 1296571 (S.D. Cal. 2007), the United States District Court for the Southern District of California dismissed, on preemption grounds, a consumer class action wherein the plaintiffs there asserted similar misbranding claims and sought remedies, like this Plaintiff, under California's Unfair Competition Law, Business & Professions Code, section

---

[1] The Complaint misidentifies and names as a separate defendant "Ferolito Vultaggio & Sons, Inc." which is a registered business name of Hornell and is not a corporation or a separate entity. Defendants ABC and Hornell shall be collectively referred to herein as "Defendants."

17200. The *Fraker* Court found that violations of the FDCA could only be brought in the name of the United States and noted that there was no private right of action to enforce misbranding claims under 21 U.S.C. § 371(a). Plaintiff simplistically argues that her claims do not seek to enforce federal law, only state law. (See Plaintiff's Mem. Opp. pp. 10-11.) That contention is disingenuous because the FDCA is implicated by Plaintiff's mislabeling claims and no cognizable state labeling law claim has been asserted. No other applicable standard can be applied other than federal law.

Simply because Plaintiff has strategically couched her claims solely in state law does not divorce her claims from the preemptive scope of FDCA labeling laws. Plaintiff is seeking to have this Court make a decision that high fructose corn syrup ("HFCS") is not natural and that the labeling of such beverages and of "Fruit Products" is deceptive. Such decisions are within the domain of the FDA. *Fraker* stands for proposition that, "[a]s a practical matter, complying with the FDA's detailed regulatory scheme in the shadow of 50 States' tort regimes will dramatically increase the burdens facing potential applicants-burdens not contemplated by Congress in enacting the FDCA…" (*Fraker*, 2007 WL 1296571, *3.) The state law claims were dismissed in *Fraker* because "to overlay the state law tort system over the FDCA would significantly increase the burdens on the FDA to ensure uniform enforcement of its administrative duties." (*Id.*)

Defendants' compliance with the FDCA is raised by the gravamen of the instant complaint that HFCS is not "natural" and that the "Fruit Products" are mislabeled. Defendants are in compliance with the FDCA with respect to the labeling of their products and this will be a key component of Defendants' defense. For instance, Plaintiff's repeated assertion that the FDA does not regulate use of the term "All Natural" is untenable. (*See*, Plaintiff's Mem. Opp., pp. 4 and 13.) Defendants' opening brief demonstrated, for more than a decade, the FDA *has* taken a position on the use of the term "natural" that is binding on the agency. Significantly, policies like the FDA's "natural" policy bind the agency and the FDA cannot punish those who label in conformance therewith. (*See* Def. Mem. Of Law, p. 10 (citing 21 C.F.R. § 10.85(e)).) The FDA is "obligated to follow" its pronouncements regarding the term "natural" "until [they] are amended or revoked" and "may not recommend legal action against a person or product with respect to an action taken in conformity" with the FDA's pronouncements. (21 C.F.R. § 10.85(e).)

Plaintiff refers to the FDA's 1993 decision not to promulgate regulations concerning use of the term "natural," but neglects to mention that the FDA made clear it would "*maintain its current policy*. . .not to restrict the use of the term 'natural' except for added color, synthetic substances, and flavors as provided in § 101.22," "***maintain its policy. . .regarding the use of 'natural,'*** as meaning that nothing artificial or synthetic. . .has been included in, or has been added to, a food that would not normally be expected to be in the food," and "continue to distinguish between natural and artificial flavors as outlined in § 101.22." (*See* 59 FR 2302, 2407 (Jan. 6, 1993) (emphasis added).) Similarly, in its 1995 decision, the FDA was "not persuaded to alter *this policy* on the term 'natural' and declined to 'move away from *our current policy*'." (*See* Def. Mem. Of Law, p. 10.)

As to the "Fruit Product" claim, Defendants set forth in detail the statutory and regulatory framework under the FDCA including labeling laws on beverages purporting to contain fruit, use of the term "juice", the names of such products, the labeling of the beverages when the fruit referenced is not a predominant juice and the approval of graphics depicting characterizing flavor ingredients such as fruit flavors when, as alleged here, the characterizing flavors but not the juice are present in the product. (*See* Def. Mem. Of Law, p. 11.) In response to this panoply of fruit beverage labeling regulations, Plaintiff steadfastly argues that "the FDA does not regulate use of specific fruit names in the names of beverages." (*See* Plaintiff's Mem. Opp., p. 6.) Presumably this means that Plaintiff is arguing there is no preemption because the FDA has not specifically regulated the use of the term "Blueberry", "Cranberry" and "Apple" and instead has regulated the labeling of all beverages bearing a fruit in the name. (*Id.*) Plaintiff's argument is absurd. There can be no dispute that the "Fruit Products", that are within the scope of Plaintiff's complaint, fall within FDA regulations. As set forth in *Holk*:

> The FDA. . .has promulgated comprehensive regulations pertaining to, *inter alia*, (1) naming beverages containing fruit or vegetable juice, (2) listing juices on the label of a diluted multiple juice drink or a blend of single-strength juices, (3) the common or usual name for diluted multiple-juice beverages or a product containing a blend of single-strength juices, (4) label depictions by "vignette or other pictorial representation" on products that have been either modified such that the original juice is not recognizable when processing is complete or diminished of nutrients, and (5) naming juices made completely or partially from concentrate. 21 C.F.R. § 1.1 et seq.; 21 C.F.R. § 102.33 (a)-(g). Further, the FDA requires

> all beverages purporting to contain fruit or vegetable juice, through their name, label, or a pictorial representation, to prominently declare, with certain exceptions, the percentage of fruit or vegetable juice, whether it contains less than 1% of a particular juice, and whether it contains 100% juice with other added ingredients, preservatives, or sweeteners. 21 C.F.R. § 101.3(a)-(g). Thus, the FDA has carefully balanced beverage industry and consumer interests and created a complex regulatory framework to govern beverage labeling.

(*Holk*, 2008 WL 2446844, *5-6.)

**II.**

**SECTION 6(C) IS NOT PART OF THE FDCA AND HAS NO BEARING UPON THE ISSUES OF PREEMPTION PRESENTED**

With respect to Plaintiff's reliance upon Section 6(c) of the Nutrition Labeling and Education Act of 1990 ("NLEA"), that section does not bear upon the preemptive effect of FDCA sections not excepted from preemption by section 343-1(a) and, when read in full context, actually supports a finding of preemption. Plaintiff repeatedly contends that Section 6(c) precludes any application of the federal doctrine of implied preemption as to food labeling. That is simply a misstatement of the law. Section 6(c) is a provision of the NLEA, but not the FDCA, and pertains to the construction of Section 6(a) of the NLEA. Section 6(a) authorized 21 U.S.C. § 343-1 which governs "national uniform nutrition labeling" and which provides for preemption of state labeling laws. Section 6(c) has no bearing on Defendants' argument that the FDCA expressly and impliedly preempts enforcement of the FDCA by private persons. Enforcement of the FDCA is governed by 21 U.S.C. § 337 which bars enforcement of the FDCA by private individuals.

Section 343-1(a) authorizes the enactment of State food labeling laws that are identical to twelve enumerated FDCA sections.[2] A State may also directly enforce only those same twelve FDCA sections subject to the limitations of Section 337(b). The FDCA bars states from enforcing or legislating a food labeling provision except for these twelve sections. Section 343(a), governing false and misleading food labels, is not included among the twelve excepted sections in Section 337(b) and Section 343-1(a). Accordingly, only the federal government – not the States or private

---

[2] The sections enumerated in Section 343-1(a) are 21 U.S.C. §§ 341, 343(b), 343(c), 343(d), 343(e), 343(f), 343(g), 343(h), 343(i), 343(k), 343(q), and 343(r).

citizens – can legislate or regulate false or misleading food labels or bring an action to enforce federal law governing false or misleading food labels.

Plaintiff asserts claims under the California Unfair Competition Law ("UCL"), California Business & Professions Code, section 17200, the False Advertising Law ("FAL"), California Business & Professions Code, section 17500, and the Consumer Legal Remedies Act ("CLRA"), California Civil Code, section 1770, subdivisions (a)(5) and (a)(7). (Plaintiff's Mem. Opp., p. 15). These laws are in no way identical to any of the twelve FDCA food labeling provisions enumerated by Section 343-1(a); as a result, the UCL, FLA and CLRA are not laws excepted from Section 343-1's preemption against state food labeling laws. The Court should not permit Plaintiff's use of California law to circumvent the preemptive effect of the FDCA and FDA regulations because Plaintiff's state law claims have the same effect as private enforcement of Section 343(a). Plaintiff's claims under the UCL, FLA and CLRA attempt indirect enforcement of the FDCA.

Contrary to Plaintiff's arguments, Defendants do rely on 21 U.S.C. § 343-1 in support of their motion to dismiss. At page 9 of their memorandum, Defendants twice refer to that section as part of the comprehensive regulatory framework supporting a finding of preemption. Defendants argued that "Congress has also mandated that any state labeling requirements be 'identical' to the equivalent regulation promulgated by the FDA under the FFDCA" and cited 21 U.S.C. § 343-1(a)(2) for this proposition. Defendants again cite, at page 9, to Section 343-1 provisions on "National uniform nutritional labeling" to demonstrate the "legion of provisions setting forth requirements necessary for compliance". Plaintiff's claim that Defendants have not cited to Section 343-1 is incorrect and Plaintiff's failure to address the application of that Section to the present motion is not reasonably explained. This failure is especially puzzling considering that Section 343-1 is analyzed and cited to in detail in *Holk*. (*Holk*, 2008 WL 244684, *4.) These statutes and regulations promulgated thereunder served as grounds for the court in *Holk* to conclude the state law claims of mislabeling were preempted "because they require the Court to regulate conduct in a field, *i.e.*, beverage labeling…that Congress intended the federal government to occupy exclusively." (*Holk*, 2008 WL 2446844, *6-7.) There are no grounds, under such circumstances, to allow Plaintiff a second bite at the apple and to file a surreply in responding to the Defendants' reply herein.

However, if a surreply is filed, then Defendants respectfully submit that further justification exists to consider oral argument and/or to permit a rebuttal by Defendants.

## III.

## THE CASES RELIED UPON BY PLAINTIFF SUPPORT PREEMPTION

In *N.Y. State Restaurant Ass'n v. N.Y. City Board of Health*, 509 F. Supp. 2d 351 (S.D.N.Y. 2007), a litigant successfully challenged a city regulation, on federal preemption grounds, that required certain New York City restaurants to post calorie content information on menu boards and menus. (*Id.* at 352.) In examining the issue of preemption, the trial court found that Section 343-1 (a)(5) preempted any State regulation of nutrient content claims including claims made by restaurants that are "not identical to the requirements of Sec. 403 (r)." (*Id.* at 356-57.) Since the city regulation operated in precisely the same manner as Section 343 (r) and the implementing regulations thereunder, the trial court found that that regulation was preempted by the FDA and unenforceable. (*Id.*) In a subsequent decision in the same case, the City amended the city ordinance to apply to all restaurants. (*N.Y. State Restaurant Ass'n v. N.Y. City Board of Health*, 2008 WL 17522455 (S.D.N.Y. 2008).) The trial court then ruled no preemption existed because the NLEA specifically excepted restaurants from Section 343(q). (*Id.* at *5.) Obviously, no express carve out from preemption exists as to food labeling. 21 U.S.C. § 343-1. States are not permitted to adopt laws governing false or misleading food labels because Section 343(a) is not among the sections excepted from preemption by Section 343-1(a).

Plaintiff also refers to *Fellner v. Tri-Union Seafoods, LLC*, __F. 3d__, 2008 WL 1296571 (3d Cir. 2008). *Fellner* supports a finding of preemption here. The plaintiff in *Fellner* alleged that she developed mercury poisoning through repeated consumption of defendant's tuna fish product and that defendant violated the New Jersey Products Liability Act by failing to warn of the risks associated with such repeated consumption. Relying on only four FDA documents, including a 2004 letter from the Commissioner of the FDA to the then-Attorney General of California advising of the Commissioner's belief that the state's suit against Tri-Union for failing to warn of risks associated with mercury consumption in tuna was preempted by agency action, the District Court dismissed the complaint on preemption grounds. The Third Circuit rejected defendant's argument that the matter

was governed by a "pervasive regulatory scheme" concerning mercury in fish and found that the FDA had not adopted any regulation and had taken no action concerning the type of mercury warnings that plaintiff sought. (*Fellner*, 2008 WL 1296571, at *31.) Declining to find any conflict between the warnings plaintiff sought and federal law, the Court concluded:

> This is a situation in which the FDA has promulgated no regulation concerning the risk posed by mercury in fish or warnings for that risk, has adopted no rule precluding states from imposing a duty to warn, and has taken no action from establishing mercury warnings as misbranding under federal law or as contrary to federal law in any other respect. Fellner's lawsuit does not conflict with the FDA's "regulatory scheme" for the risks posed by mercury in fish or the warnings appropriate for that risk because the FDA simply has not regulated the matter.

(*Fellner*, 2008 WL 1296571 at *36.)

The reasoning in *Fellner* supports dismissal because there is a regulation of the term "Natural" with respect to foods under the supervision of the FDA and the FDA has repeatedly maintained its policy of relying on this definition. The FDA also heavily regulates the labeling and content of "Fruit Products" which are the subject of the Complaint. To craft different definitions and regulations under state law would conflict with and obstruct the pervasive regulatory scheme authorized by Congress.

Plaintiff also relies upon *In re Farm Raised Salmon Cases*, 42 Cal. 4th 1077 (2008), to avoid the doctrine of preemption. In *Farm Raised Salmon*, the defendants sold seafood that contained the chemical color additives astaxanthin and canthaxanthin. However, contrary to state and federal law, the defendants did not declare in packaging that the fish was artificially colored. (*Id.* at 1082-84.) This conduct allegedly violated food labeling requirements found in both the FDCA and parallel provisions of California's Sherman Food, Drug, and Cosmetic Law. (*Id.*) The Court recognized that 21 U.S.C. § 343-1(a) is "an explicit preemption provisions" that precludes states from establishing artificial color labeling requirements that are not identical to the requirements under federal law. The litigation was not preempted, however, because the plaintiffs' claims were based on labeling requirements under the Sherman Law that were identical to the requirements imposed by federal law.

Plaintiff's claims here are the opposite of those in *Farm Raised Salmon*. Plaintiff does not, and cannot, allege that the HFCS and the fruit products do not meet the labeling requirements established by the FDCA and the FDA. No Sherman claim is alleged. Yet, Plaintiff asserts that this federally regulated and federally compliant label violates California statutes and common law. Plaintiff's litigation attempts to impose state requirements for a labeling content claim that are not identical to the requirements imposed by federal law. Accordingly, Plaintiff's action challenging Defendants' labeling is preempted.

**IV.**

**UNDER *TWOMBLY*, THE COMPLAINT SHOULD BE DISMISSED AS IMPLAUSIBLE ON ITS FACE**

Plaintiff attempts to minimize the independent grounds to dismiss the complaint pursuant to the standard of *Bell Atlantic Corp. v. Twombly*, ___ U.S. ___ , 128 S.Ct. 1955 (2007). Under *Twombly*, Plaintiff's claims should be dismissed as implausible on their face. Plaintiff does not dispute that she did not read the entire label including the ingredient panel prior to purchasing and consuming the beverages. A simple reading of the labels, samples of which are attached to the motion to dismiss, would have shown that the content of the "Fruit Products" and that high fructose corn syrup is contained in the "All Natural" beverages. Notwithstanding Plaintiff's failure to read the ingredient label, Plaintiff still maintains that the beverage ingredients were important to her and that she was deceived. Plaintiff's claim for deception is implausible because the ingredient information was readily available to Plaintiff if Plaintiff bothered to read the label. Defendants respectfully submit that, under the reasonable consumer standard, Plaintiff's claims of deception as

to the contents of the product are makeweight. (*McKinnis v. Sunny Delight*, 2007 WL 4766525, *3 (C.D. Cal. 2007).) No consumer survey can alter the fact that the Plaintiff is asking the Court to believe that she was deceived even though the alleged deception is beyond credulity.[3]

Dated: September 8, 2008

**WILSON PETTY KOSMO & TURNER LLP**

By: s/Meryl C. Maneker
Vickie E. Turner
Meryl C. Maneker
Hubert Kim
mmaneker@wpkt.com

**McELROY, DEUTSCH, MULVANEY & CARPENTER, LLP**

Robert P. Donovan
*Appearing Pro Hac Vice*
Ryan P. Mulvaney
*Appearing Pro Hac Vice*
Attorneys for Defendants
ARIZONA BEVERAGE CO., LLC HORNELL BREWING COMPANY, INC., and FEROLITO VULTAGGIO & SONS, INC

---

[3] The reference to the website in the Defendants' motion was to respond to Plaintiff's allegations, in her Complaint, that she was deceived by the reference to "here's to your health" on the Defendants' website. (Comp. ¶41). Such statements constitute mere puffery and are not actionable. *In re Wet Seal, Inc. Securities Litigation*, 518 F. Supp. 2d 1148, 1168 (C.D.Cal. 2007), *citing In re Copper Mt. Sec. Litg.*, 311 F. Supp. 2d 857, 869 (N.D. Cal. 2004.)

| UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF CALIFORNIA | | COURT USE ONLY |
|---|---|---|
| TITLE OF CASE (ABBREVIATED)<br>***HEIDI HITT v. ARIZONA BEVERAGE CO., LLC, ET AL.*** | | |
| ATTORNEY OR PARTY WITHOUT ATTORNEY (NAME AND ADDRESS):<br>VICKIE E. TURNER. (106431)<br>MERYL C. MANEKER (188342 )<br>HUBERT KIM (204957)<br>**WILSON PETTY KOSMO & TURNER LLP**<br>550 West C Street, Suite 1050<br>San Diego, CA 92101 | TELEPHONE NO.:<br>Tel. (619) 236-9600<br>Fax: (619) 236-9669 | |
| ATTORNEYS FOR:<br>Defendants Arizona Beverage Co., LLC; Hornell Brewing Company, Inc.; and Ferolito Vultaggio & Sons, Inc. | HEARING DATE – TIME | CASE NUMBER:<br>08-CV-0809 WQH POR |

## PROOF OF SERVICE

At the time of service I was over 18 years of age and not a party to this action. My business address is Wilson Petty Kosmo & Turner LLP, 550 West C Street, Suite 1050, San Diego, CA 92101.

On September 8, 2008, I served the following documents:

1. DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN REPLY TO PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS

I served the documents on the person below, as follows:

G. Richard Baker
Baker Law PC
700 29th Street South
Birmingham, Alabama 35233
(205) 714-7166
Counsel for Plaintiff HEIDI HITT, individually and on behalf of all those similarly situated
**Via Electronic Service**

☐ **By fax transmission.** Based on an agreement of the parties to accept service by fax transmission, I faxed the documents to the persons at the fax numbers listed below. No error was reported by the fax machine that I used. A copy of the record of the fax transmission, which I printed out, is attached.

☐ **By United States mail.** I enclosed the documents in a sealed envelope or package addressed to the persons at the addressed below and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with this business's practice for collection and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

☐ **By overnight delivery.** I enclosed the documents in an envelope or package provided by an overnight delivery carrier and addressed to the persons at the addresses above. I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight delivery carrier.

☒ **By ELECTRONIC SERVICE.** I served the above listed document(s), described above via the Central District of the United States District Court's Electronic Filing Program on the designated recipients through electronic transmission through the CM/ECF system on the Court's website. Upon completion of said transmission and filing of said documents, a certified receipt is issued to filing party acknowledging receipt by the Court's CM/ECF system, and once all designated recipients are electronically served, proof of electronic service is returned to the filing party.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made. Executed on September 8, 2008 at San Diego, California.

Lori Cutrell